In the

# United States Court of Appeals

## For the Seventh Circuit

No. 20-2793

ALAN D. HALPERIN and EUGENE I. DAVIS,

*Plaintiffs-Appellants*,

*v.*

MARK R. RICHARDS, *et al*.,

*Defendants-Appellees*.

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 1:19-cv-01561-WCG — **William C. Griesbach**, *Judge*.

ARGUED APRIL 15, 2021 — DECIDED JULY 28, 2021

Before KANNE, ROVNER, and HAMILTON, *Circuit Judges*.

HAMILTON, *Circuit Judge*. We consider in this case whether the Employee Retirement Income Security Act (ERISA) preempts certain state-law claims brought by bankruptcy creditors on behalf of a company against its directors and officers and others alleged to have inflated the company's stock value to conceal the company's decline and to benefit corporate insiders. We hold that ERISA does not preempt the plaintiffs' claims against the company's directors and officers.

ERISA expressly contemplates parallel corporate liability against directors and officers who serve dual roles as both corporate and ERISA fiduciaries. We also hold, however, that ERISA preempts the plaintiffs' claims against the former ERISA trustee of the employee benefit plan and its non-fiduciary contractor. Corporation-law aiding and abetting liability against these defendants would interfere with the cornerstone of ERISA's fiduciary duties—the exclusive benefit rule in Section 404, 29 U.S.C. § 1104(a)(1)(A).

I.   *Factual and Procedural Background*

In reviewing a grant of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), we accept the plaintiffs' factual allegations as true and draw all reasonable inferences in their favor. *Kolbe & Kolbe Health & Welfare Benefit Plan v. Medical College of Wisconsin, Inc.*, 657 F.3d 496, 502 (7th Cir. 2011). According to the plaintiffs, Appvion, Inc. was in financial freefall from 2012 to 2016 as revenues from its paper business declined sharply. During those years, Appvion repeatedly missed its financial projections, yet the defendants continued to project unrealistic success when valuing the company's stock—which was wholly-owned by employees under an ERISA-covered Employee Stock Ownership Plan (ESOP).

The plaintiffs assert that, while the corporate ship was sinking, the defendants fraudulently inflated these stock valuations to line the pockets of directors and officers, whose pay was tied to the ESOP valuations. Plaintiffs allege that the directors and officers carried out this scheme with knowing aid from the ESOP trustee, Argent Trust Company (Argent), and its independent appraiser, Stout Risius Ross, LLC (Stout), who led the ESOP valuation process in coordination with the directors and officers. The plaintiffs also allege that Appvion

directors provided unlawful dividends to its parent company, Paperweight Development Corporation, by forgiving and re-extending certain intercompany notes to it.

In October 2017, Appvion and its affiliates filed for bankruptcy protection in the Bankruptcy Court for the District of Delaware. See *In re OLDAPCO, Inc.*, No. 17-12082 (MFW) (Bankr. D. Del.). Under Appvion's liquidation plan, Appvion's bankruptcy creditors were given authority through a liquidating trust to pursue certain corporation-law claims on behalf of Appvion to recover losses from the defendants' alleged wrongs against the corporation. See *Halperin v. Richards*, 2020 WL 5095308, at *1 (E.D. Wis. Aug. 28, 2020) (describing bankruptcy proceedings).

Plaintiffs here are Alan Halperin and Eugene Davis, co-trustees of the Appvion Liquidating Trust. They originally filed this action in the Delaware bankruptcy court. The bankruptcy court transferred Counts I–VIII of the plaintiffs' Revised Second Amended Complaint to the U.S. District Court for the Eastern District of Wisconsin. Counts I–IV assert state-law claims against the director and officer defendants (Mark Richards, Thomas Ferree, Tami Van Straten, Jeffrey Fletcher, Kerry Arent, Stephen Carter, Terry Murphy, Andrew Reardon, Kathi Seifert, Mark Suwyn, Carl Laurino, and David Roberts) for breaching their corporate fiduciary duties. Counts V and VI allege that Argent and Stout aided and abetted those breaches. And Counts VII and VIII assert state-law unlawful dividend claims against the directors and officers.

All defendants moved in the district court to dismiss all of these claims on the theory that their roles in Appvion's ESOP valuations were governed by ERISA and that ERISA preempted state corporation-law liability arising from the

ESOP valuation process. More specifically, the directors and officers argue that, despite their dual roles as corporate and ERISA fiduciaries, they acted exclusively in their ERISA roles when carrying out the ESOP activity underlying the plaintiffs' claims. See 29 U.S.C. § 1002(21)(A) (a corporate officer "is a fiduciary with respect to a plan to the extent … he has any discretionary authority or discretionary responsibility in the administration of such plan"). Argent and Stout similarly argue that the claims against them "relate to" the plan, 29 U.S.C. § 1144(a), because they are based on the performance of their ERISA duties in valuing the company stock owned by the ESOP.

The district court agreed with defendants that ERISA preempts all of plaintiffs' claims. The court granted the defendants' motion to dismiss Counts I–VIII with prejudice because they "are grounded in … ERISA-related duties … and 'relate to' the ESOP." *Halperin*, 2020 WL 5095308, at *4. The district court's ERISA preemption finding is a matter of law that we review de novo. *Kolbe & Kolbe*, 657 F.3d at 504.

II. *Principles of ERISA Preemption*

In enacting ERISA, Congress included two distinct and powerful preemption provisions: complete preemption under ERISA § 502, 29 U.S.C. § 1132, and conflict preemption under ERISA § 514, 29 U.S.C. § 1144. The defendants assert that the claims in this case are conflict-preempted under the latter provision, which preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA.

The fundamental challenge in interpreting this preemption provision stems from its broad language: "If 'relate to'

were taken to extend to the furthest stretch of its indeterminacy, then for all practical purposes pre-emption would never run its course…." *New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655 (1995). But, on the other hand, Congress clearly intended ERISA preemption to be broad. Congress chose "deliberately expansive" language, "conspicuous for its breadth." *California Div. of Labor Standards Enf't v. Dillingham Construction, N.A., Inc.*, 519 U.S. 316, 324 (1997), quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992).

Since the broad and vague statutory text offers little help in drawing boundaries for ERISA conflict preemption, *Travelers*, 514 U.S. at 655, the Supreme Court "considers ERISA's objectives 'as a guide to the scope of the state law that Congress understood would survive.'" *Rutledge v. Pharmaceutical Care Mgmt. Ass'n*, 141 S. Ct. 474, 480 (2020), quoting *Dillingham Construction*, 519 U.S. at 325. Congress's objective in enacting ERISA's conflict preemption provision was "'to ensure that plans and plan sponsors would be subject to a uniform body of benefits law,' thereby 'minimiz[ing] the administrative and financial burden of complying with conflicting directives' and ensuring that plans do not have to tailor substantive benefits to the particularities of multiple jurisdictions." *Id.*, quoting *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 142 (1990).

Guided by that objective, the Supreme Court has written that a law "relates to" an ERISA plan "if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–97 (1983) (state law requiring plans to pay specific benefits was not enforceable against ERISA plans). This generally encompasses two categories of state laws. *Gobeille v. Liberty Mut. Ins. Co.*, 577 U.S. 312, 319 (2016). First,

"[w]here a State's law acts immediately and exclusively upon ERISA plans … or where the existence of ERISA plans is essential to the law's operation …, that 'reference' will result in pre-emption." *Id.* at 319–20, quoting *Dillingham Construction*, 519 U.S. at 325; see, e.g., *Mackey v. Lanier Collection Agency & Serv., Inc.*, 486 U.S. 825, 829 (1988) ("The Georgia statute at issue here expressly refers to—indeed, solely applies to—ERISA employee benefit plans."). Second, ERISA preempts a state statute or claim that, while not facially tied to ERISA, "'governs … a central matter of plan administration' or 'interferes with nationally uniform plan administration.'" *Gobeille*, 577 U.S. at 320, quoting *Egelhoff v. Egelhoff*, 532 U.S. 141, 148 (2001) (preempting Washington benefits rule that would create state-by-state differences in plan administration).

State laws that directly prohibit something ERISA permits, and vice versa, fall into this second category. See, e.g., *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 524 (1981) (state law preempted "because it eliminates one method for calculating pension benefits—integration—that is permitted by federal law"). But direct conflict is not always needed to show preemption. Some state laws that run parallel to or in harmony with ERISA's requirements are nonetheless preempted. *Gobeille*, 577 U.S. at 323 ("even parallel[] regulations from multiple jurisdictions could create wasteful administrative costs and threaten to subject plans to wide-ranging liability"). Some parallel state rules, however, are not preempted. See *Rutledge*, 141 S. Ct. at 480 ("ERISA does not pre-empt state rate regulations that merely increase costs or alter incentives for ERISA plans without forcing plans to adopt any particular scheme of substantive coverage."), citing *Travelers*, 514 U.S. at 668. Relevant here, this second category of laws interfering

with ERISA also includes state-law causes of action seeking "alternative enforcement mechanisms" as an end run around ERISA's more limited remedial scheme. *Travelers*, 514 U.S. at 658, citing *Ingersoll-Rand*, 498 U.S. at 145 (ERISA preempted state-law claim for wrongful discharge based on employee's allegation that employer fired him to avoid making pension contributions); see also *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987) (ERISA preempted state-law claims for breach of contract and tort for alleged improper processing of claims for plan benefits).

III. *Director and Officer Defendants*

Applying these principles to the claims against the directors and officers, we find that the plaintiffs' claims are not preempted because ERISA contemplates parallel state-law liability against directors and officers serving dual roles as both corporate and ERISA fiduciaries. Section 408(c)(3) of ERISA explicitly allows corporate insiders to serve as ERISA fiduciaries. 29 U.S.C. § 1108(c)(3). This allowance has been called ERISA's "fundamental contradiction" because of the tension it creates with both the traditional duty of loyalty at the heart of the common law of trusts and ERISA's "exclusive benefit" rule in 29 U.S.C. § 1104(a)(1)(A)(i). See Daniel R. Fischel & John H. Langbein, *ERISA's Fundamental Contradiction: The Exclusive Benefit Rule*, 55 U. Chi. L. Rev. 1105 (1988). Professors Fischel and Langbein defended this "fundamental contradiction" as necessary given employers' and employees' dual roles as both settlors and beneficiaries of ERISA plans. *Id.* at 1126. If dual-hat fiduciaries were not allowed, employers that established ERISA plans would be "assuming financial liabilities without effective controls," and "Employers tend not to write blank checks." *Id.* at 1127.

Allowing directors and officers to participate in plan decision-making as ERISA fiduciaries therefore supports employers' incentives to form ERISA plans—something Congress clearly desired. Unsurprisingly, however, these dual roles also produce conflicts of interest that have for decades challenged ERISA plans and courts trying to implement ERISA faithfully in an array of contexts.

ERISA expressly allows corporate insiders to have dual corporate and ERISA obligations. Whatever complications those dual roles may entail, we are persuaded that ERISA should not be interpreted to preempt parallel state-law liability against the directors and officers in this case. Our reasoning does not extend to preemption of the aiding and abetting claims against Argent and Stout because those claims seek, in essence, to impose the complicating dual roles on a single-role ERISA fiduciary and its contractor, whose actions should be governed by an undiluted exclusive-benefit rule under ERISA.

A. *Limited Precedent*

There is little circuit-level precedent assessing whether and to what extent ERISA preempts corporation-law claims against dual-hat directors and officers. Beyond the Fifth Circuit's decision in *Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan Enterprises, Inc.*, 793 F.2d 1456 (5th Cir. 1986), there seems to be only a handful of district court cases that squarely address the problem. Most of these cases hold that ERISA does not preempt corporation-law claims against dual-hat directors and officers.

In *Sommers Drug Stores*, for example, the Fifth Circuit assessed whether ERISA preempted a common-law breach of

fiduciary duty claim brought by an employee profit sharing trust (which was both a minority shareholder and ERISA plan) against the company president (a dual-hat corporate and ERISA fiduciary). 793 F.2d at 1468. The trust brought fiduciary duty claims under both state common law and ERISA. The district court held that ERISA preempted the state-law claims, but the Fifth Circuit reversed. The Fifth Circuit's reasoning focused on the shareholder-director relationship, which imposed special duties wholly independent from any parallel ERISA duties:

> The state common law of fiduciary duty that the Trust seeks to invoke in this case centers upon the relation between corporate director and shareholder. The director's duty arises from his status as director; the law imposes the duty upon him in that capacity only. Similarly, the shareholder's rights against the corporate director arise solely from his status as shareholder. That in a case such as ours the director happens also to be a plan fiduciary and the shareholder a benefit plan has nothing to do with the duty owed by the director to the shareholder. The state law and ERISA duties are parallel but independent: as director, the individual owes a duty, defined by state law, to the corporation's shareholders, including the plan; as fiduciary, the individual owes a duty, defined by ERISA, to the plan and its beneficiaries.

*Id.* at 1468.

*Sommers Drug Stores*'s "parallel but independent" duties theory has been followed in other cases. See *In re Ullico Inc.*

*Litig.*, 605 F. Supp. 2d 210, 222 (D.D.C. 2009) ("[T]he allegations of breach of fiduciary duty … were not preempted because they 'derive from the counterclaim defendants' obligations and responsibilities as officers of the corporation under state corporate law, rather than their relationship to the … plans as beneficiaries.'"), quoting *Carabillo v. ULLICO, Inc.*, 357 F. Supp. 2d 249, 259 n.7 (D.D.C. 2004), in turn citing *Sommers Drug Stores*, 793 F.2d at 1470; *Crabtree v. Central Florida Investments, Inc. Deferred Comp. Plan*, 2012 WL 6523584, at *2 (M.D. Fla. Oct. 3, 2012), report and recommendation approved, 2012 WL 6523078 (M.D. Fla. Dec. 14, 2012) ("The preemption principles do not apply when, as is the case here, the cause of action for breach of fiduciary duty is against a corporate officer for duties owed to the corporation."); *Richmond v. American Sys. Corp.*, 792 F. Supp. 449, 458–59 (E.D. Va. 1992) (same: "The state corporate laws … regulate relations between plaintiffs, as minority shareholders … and Ramsey and Curran, as … officers[] and directors. The relations … function irrespective of [ERISA plan] administration."); *In re Antioch Co.*, 456 B.R. 791, 839 (Bankr. S.D. Ohio 2011), report and recommendation adopted, 2011 WL 3664564 (S.D. Ohio Aug. 12, 2011), modified on reconsideration sub nom. *Antioch Co. Litig. Trust v. Morgan*, 2012 WL 6738676 (S.D. Ohio Dec. 31, 2012), ("[A]ll three defendants were ESOP fiduciaries. However, … all the claims against these defendants are based on independent legal duties owed in their roles as corporate fiduciaries…."); *In re Dehon, Inc.*, 334 B.R. 55, 68 (Bankr. D. Mass. 2005) (relying on *Sommers Drug Stores* and finding no preemption: "the claims are brought by a third party to enforce rights held by the corporation against directors of that corporation for their acts as corporate directors"); see also *Housman v. Albright*, 368

Ill. App. 3d 214, 223, 857 N.E.2d 724, 733 (2006) (same), citing *Sommers Drug Stores*, 793 F.2d at 1465.

Some courts have further noted that preempting state claims against directors and officers "[s]imply because events precipitating [them] occurred in the general context of an employee benefit plan," *Richmond*, 792 F. Supp. at 459, would contravene ERISA's core purpose to prevent misuse of plan assets by enabling directors and officers to defraud shareholders and creditors whenever they don their ERISA hats. See *In re Antioch*, 456 B.R. at 841–42 (preemption "would do nothing more than immunize officers and directors … from allegations of self-dealing by the corporate entity to which they have defined independent legal obligations"); see also *Smith v. Crowder Jr. Co.*, 280 Pa. Super. 626, 639, 421 A.2d 1107, 1114 (Pa. Super. 1980) ("ERISA was not intended as a device to permit corporate directors and officers to defraud with impunity corporate shareholders and creditors….").

The defendants rely on two cases finding that ERISA did preempt certain state corporation-law claims: *McLemore v. Regions Bank*, 682 F.3d 414, 425 (6th Cir. 2012), and *AT & T v. Empire Blue Cross/Blue Shield*, 1994 WL 16057794, at *27 (D.N.J. July 19, 1994). These cases offer little support for the directors and officers' defense here. *McLemore* held ERISA preempted an entirely different sort of claim. The *McLemore* plaintiffs asserted state-law damages claims against Regions Bank "for knowingly permitting [ERISA fiduciaries] to breach their fiduciary duties" under ERISA. 682 F.3d at 426. The Sixth Circuit held such claims were preempted because the plaintiffs were ERISA "participant[s], beneficiar[ies], or fiduciar[ies]" who could bring these same claims under ERISA. Such plaintiffs were seeking an "alternative

enforcement mechanism" under state law, which ERISA § 514 prohibits. *Id*. (internal quotation omitted). So, unlike in *Sommers Drug Stores*, the plaintiffs' claims in *McLemore* sought to enforce ERISA duties, not corporation-law duties. And, unlike *McLemore*, the plaintiffs here—bankruptcy creditors suing on behalf of the corporation—have no corollary cause of action under ERISA that they could invoke.

The *AT & T* case is also unhelpful because it rested on a faulty premise that ERISA preempts any state claim arising from conduct that occurs in the context of plan administration. *AT & T* held that since "ERISA at least arguably governs the alleged misconduct at issue, plaintiffs' state law claims predicated upon that same alleged conduct are preempted." 1994 WL 16057794 at *27. The Supreme Court has rejected such a broad rule, clarifying that "lawsuits against ERISA plans for run-of-the-mill state-law claims such as unpaid rent, failure to pay creditors, or even torts committed by an ERISA plan …, although obviously affecting and involving ERISA plans and their trustees, are not pre-empted." *Mackey*, 486 U.S. at 833. As a result, the defendants are left without any firm precedent supporting the position that ERISA preempts corporation-law claims against dual-hat directors and officers.

B.  *Analysis*

Turning to this case, we agree with the results reached in most of the above cases, that ERISA did not preempt the plaintiffs' claims against the director and officer defendants. But our reasons differ somewhat from the "parallel but independent" duties theory employed by other courts. We agree with *Sommers Drug Stores* that the duties must be parallel; state law cannot be allowed to require an act that

ERISA forbids. So, here, the fact that the directors and officers' corporation-law and ERISA duties both prohibit the fraudulent conduct alleged by the plaintiffs is crucial. But, unlike *Sommers Drug Stores*, we do not lean heavily on the fact that the defendants' corporation-law duties have independent state-law grounds. Virtually all state-law causes of action derive from independent state-law duties. Rather, what we find most important is that ERISA is written to invite, and certainly to tolerate, *these specific parallel and independent duties*—the directors and officers' fiduciary duties to the corporation.

### 1. *Alternative Remedies*

We can first quickly dispel any notion that the plaintiffs are attempting to circumvent ERISA's exclusive remedial scheme. These plaintiffs have no rights under ERISA as a "participant, beneficiary, or fiduciary." 29 U.S.C. § 1132(a)(3). They are not asserting state-law claims as an end run around their more limited federal remedies. See *Pilot Life*, 481 U.S. at 54 (ERISA's "policy choices … would be completely under-mined if *ERISA-plan participants and beneficiaries* were free to obtain remedies under state law that Congress rejected in ERISA") (emphasis added). Unlike plaintiffs covered by ERISA, these non-ERISA plaintiffs "were not parties to the ERISA 'bargain'"; they did not "g[i]ve up state law causes of action" to "receive[] federal causes of action under ERISA in exchange." *Lordmann Enters., Inc. v. Equicor, Inc.*, 32 F.3d 1529, 1533–34 (11th Cir. 1994), quoting *Memorial Hosp. Sys. v. North-brook Life Ins. Co.*, 904 F.2d 236, 249 (5th Cir. 1990).[1]

---

[1] We need not decide whether ERISA would preempt similar corporation-law claims brought by ERISA beneficiaries, participants, or

This is why, under the related ERISA doctrine of complete preemption—which addresses state-law causes of action more often—the first prong of the Supreme Court's test for preemption is whether the plaintiff "at some point in time, could have brought his claim under ERISA…." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004). This case arises under conflict preemption rather than complete preemption. But "given the similar underlying policy considerations," *Davila*'s test is useful in assessing the similar question of alternative remedies under conflict preemption. *Franciscan Skemp Healthcare, Inc. v. Cent. States Joint Board Health & Welfare Trust Fund*, 538 F.3d 594, 600 n.3 (7th Cir. 2008). Here, *Davila* would not preempt the plaintiffs' claims because the plaintiffs cannot sue under ERISA. That weighs against the presence of an alternative remedies problem here.

### 2. *The Exclusive Benefit Rule*

The alternative remedies issue, however, only begins our inquiry. ERISA would still preempt the plaintiffs' claims if they "'govern[] … a central matter of plan administration' or 'interfere[] with nationally uniform plan administration.'" *Gobeille*, 577 U.S. at 320, quoting *Egelhoff*, 532 U.S. at 148. We must therefore analyze whether and to what extent the plaintiffs' parallel state-law fiduciary duty claims interfere with how Congress intended ERISA's fiduciary duties to operate.

Section 404 of ERISA imposes an exclusive duty of loyalty on fiduciaries to act solely in the interest of ERISA beneficiaries. Subject to certain qualifications, "a fiduciary shall discharge his duties with respect to a plan *solely in the interest of*

---

fiduciaries who can sue Appvion's directors and officers under ERISA for the same conduct.

the participants and beneficiaries and … *for the exclusive purpose of* … providing benefits to participants and their beneficiaries." 29 U.S.C. § 1104(a)(1)(A)(i) (emphases added). This is known as the "exclusive benefit" rule. A related provision provides another formulation of the rule: "the assets of a plan *shall never inure to the benefit of any employer* and shall be held *for the exclusive purposes of providing benefits* to participants in the plan and their beneficiaries…." 29 U.S.C. § 1103(c)(1) (emphases added). In addition, 29 U.S.C. § 1106 provides a list of "prohibited transactions" and implements the exclusive benefit rule by prohibiting various types of self-dealing and other conflicts of interest.

ERISA's exclusive benefit rule derives from "one of the most fundamental and distinctive principles of trust law, the duty of loyalty." Langbein & Fischel, 55 U. Chi. L. Rev. at 1108. ERISA is built on a trust-law model. See 29 U.S.C. § 1103(a) ("all assets of an employee benefit plan shall be held in trust"). Congress intended courts to "apply rules and remedies similar to those under traditional trust law to govern the conduct of fiduciaries." H.R. Rep. No. 93-1280, at 295 (1974) (Conf. Rep.). By importing the trust form and its duty of loyalty into benefit plans, ERISA drew from a familiar legal framework to protect plans from the kind of internal misuse that motivated ERISA's enactment. Congress enacted ERISA in response to widespread concern over the misuse of employee pensions, notoriously exemplified by Studebaker's default on its pension plan in 1963 and the severe corruption uncovered in the Teamsters union through Senate investigations. See John H. Langbein, *What ERISA Means by "Equitable": The Supreme Court's Trail of Error in Russell, Mertens, and Great-West*, 103 Colum. L. Rev. 1317, 1322–24 (2003).

ERISA's duty of loyalty is the "highest known to the law." *Donovan v. Bierwirth*, 680 F.2d 263, 272 n.8 (2d Cir. 1982). A fiduciary of a trust has "a duty to the beneficiary to administer the trust solely in the interest of the beneficiary." Restatement (Second) of Trusts § 170(1) (1959). The reason for such a strict and exclusive duty of loyalty stems from the unique trust relationship, where a third party is entrusted with a settlor's property to be used for the beneficiary. Under this arrangement, "neither the transferor nor the beneficiaries are well situated to monitor closely the actions of the trustee." Langbein & Fischel, 55 U. Chi. L. Rev. at 1114.

With such power comes responsibility. The duty of loyalty steps in as a forceful substitute for direct monitoring. It protects beneficiaries by barring any conflict of interest that might put the fiduciary in a position to engage in self-serving behavior at the expense of beneficiaries. The rule is designed to deter misbehavior by establishing an "irrebuttable presumption of wrongdoing whenever the trustee engages in conflict tainted transactions." *Id.* at 1114–15. This is strong medicine—so strong that a "trustee who deals with trust property for his own account is not allowed a defense even when the transaction was … harmless to the beneficiaries," and even if it actually "benefit[s] both" the beneficiary and trustee. *Id.* at 1115.

These common-law trust principles apply equally to ERISA's duty of loyalty, embodied in the exclusive benefit rule. Good faith is not a defense. *Leigh v. Engle*, 727 F.2d 113, 124 (7th Cir. 1984). And "ERISA clearly contemplates actions against fiduciaries who profit by using trust assets, even where the plan beneficiaries do not suffer direct financial loss." *Id.* at 122. As 29 U.S.C. § 1104(a)(1)(A)(i) commands,

ERISA fiduciaries must always act with an "eye single to the interests of the participants and beneficiaries." *Id.* at 123, quoting *Donovan v. Bierwirth*, 680 F.2d at 271.

Given the formidable backdrop of ERISA's exclusive benefit rule, we are skeptical of any state-law attempt to saddle ERISA fiduciaries with other distracting and potentially conflicting duties to the corporate employer. Nevertheless, when it comes to corporate directors and officers, ERISA tolerates some measure of dual loyalty.

### 3. *Exception for Dual-Hat Directors and Officers*

Despite the exclusive benefit rule, ERISA § 408(c)(3) explicitly allows corporate insiders—who already have fiduciary duties under corporation law—to serve as ERISA fiduciaries. Section 408(c)(3) states that ERISA's "prohibited transactions" rules shall not "be construed to prohibit any fiduciary from … serving as a fiduciary in addition to being an officer, employee, agent, or other representative of a party in interest." 29 U.S.C. § 1108(c)(3). ERISA defines "party in interest" to include corporate employers and other plan sponsors. 29 U.S.C. § 1002(14). Moreover, ERISA invites conflicts of interest within ESOPs like the plan in this case. ERISA's prohibited transaction rules ordinarily forbid deals between plans and other interested parties such as large stockholders, see 29 U.S.C. § 1106(a)(1)(E) & (a)(2), but ERISA specifically allows such deals for ESOPs, see 29 U.S.C. § 1107(b)(1) & (d)(3)(A)(ii).

By "expressly contemplat[ing] fiduciaries with dual loyalties," § 408(c)(3) takes "an unorthodox departure from the common law" that is in obvious tension with ERISA's exclusive benefit rule. *Donovan v. Bierwirth*, 538 F. Supp. 463, 468 (E.D.N.Y. 1981), aff'd as modified, 680 F.2d 263 (2d Cir. 1982).

As noted, scholars have defended this "fundamental contra-
diction" as necessary to encourage employers to establish
benefit plans. Without dual-hat fiduciaries, employers that es-
tablish ERISA plans would be "assuming financial liabilities
without effective controls." Langbein & Fischel, 55 U. Chi. L.
Rev. at 1127. The effect of adhering strictly to the common-
law rule would likely be a lower rate of plan formation. *Id.*

ERISA's necessary accommodation for dual-hat directors
and officers has produced messy conflicts of interest that
courts and commentators have long recognized and struggled
to resolve. See generally Laurence B. Wohl, *Fiduciary Duties
Under ERISA: A Tale of Multiple Loyalties*, 20 U. Dayton L. Rev.
43 (1994). Courts "are faced with the problem of reconciling
the overwhelming requirements of common-law trustee
singlemindedness with the ERISA permission for dual
loyalties." *Id.* at 58. Courts "must develop a tolerance for the
resulting conflicts such dual roles undoubtedly will cause."
*Id*. The Supreme Court itself has noted this problem, writing
that "the analogy between ERISA fiduciary and common law
trustee becomes problematic … because the trustee at
common law characteristically wears only his fiduciary hat
when he takes action to affect a beneficiary, whereas the
trustee under ERISA may wear different hats." *Pegram v.
Herdrich*, 530 U.S. 211, 225 (2000).

Accordingly, since the 1980s, courts have recognized and
tried to harmonize directors and officers' dual loyalties under
ERISA. In *Donovan v. Bierwirth*, for example, the Secretary of
Labor sued dual-hat trustees of an ERISA plan for breaching
their duty of loyalty to beneficiaries by using plan assets to
purchase company stock at an inflated price to fend off an out-
side takeover bid. 538 F. Supp. at 465–68. The district court

first noted that, because ERISA "abrogated the traditional common law rule" and "clearly contemplates … fiduciaries with dual loyalties," the trustees "did not commit per se violations of ERISA either by their failure to abstain from the investment decision … or by the mere acquisition of [company] stock." *Id.* at 469–70.

Nevertheless, the court held that "when a fiduciary has dual loyalties, his independent investigation into the basis for an investment decision which presents a potential conflict of interests must be both intensive and scrupulous" to ensure that the conflict is not influencing the decision. *Id.* at 470, discussing 29 U.S.C. § 1104(a)(1)(B) (ERISA duty of prudence). Applying that standard, the court found that the trustees failed to exercise such care by not recognizing and taking steps to neutralize their inherent conflict—such as, at the very least, consulting independent counsel. *Id.* at 473.

The Second Circuit affirmed, clarifying that dual-hat directors and officers must do everything possible to "avoid placing themselves" in a decision presenting an actual conflict, and if faced with such a conflict must inform themselves and act to neutralize it, perhaps by temporarily resigning as trustees. *Donovan v. Bierwirth*, 680 F.2d at 271–72. But unlike at common law, the court acknowledged, "officers of a corporation … do not violate their duties as trustees by taking action which, after careful and impartial investigation, they reasonably conclude best to promote the interests of participants and beneficiaries simply because it incidentally benefits the corporation or, indeed, themselves." *Id* at 271.

In this circuit, we used a similar approach to reconcile ERISA's exclusive benefit rule with its allowance for dual-hat directors and officers in *Leigh v. Engle*, 727 F.2d 113 (7th Cir.

1984). Dual-hat directors and officers invested ERISA trust assets in companies that were targets of directors and officers' hostile takeover attempts. We said that "plan trustees who are also officers of either the 'target' or the 'raider' could be seen as having a significant 'interest' of their own in the outcome of the contest." *Id.* at 127. We invoked the *Donovan v. Bierwirth* method of addressing directors and officers' dual loyalties and held that the directors and officers violated ERISA's fiduciary requirements:

> Where the potential for conflicts is substantial, it may be virtually impossible for fiduciaries to discharge their duties with an "eye single" to the interests of the beneficiaries, and the fiduciaries may need to step aside, at least temporarily, from the management of assets where they face potentially conflicting interests. … Where it might be possible to question the fiduciaries' loyalty, they are obliged at a minimum to engage in an intensive and scrupulous independent investigation of their options to insure that they act in the best interests of the plan beneficiaries. In the case before us, we believe there is an additional factor which weighs heavily in evaluating the loyalty of the fiduciaries. Here the control efforts lasted for several months, and in the case of Hickory, for over a year. The Reliable Trust held its shares involved in the control contests throughout these periods, and, as we discuss below, the trust's use of its assets at all relevant times tracked the best interests of the Engle [corporate insiders'] group in the control contest. We believe that the extent and duration

> of these actions congruent with the interests of
> another party are also relevant for courts in de-
> ciding whether plan fiduciaries were acting
> solely in the interests of plan beneficiaries.

*Id.* at 125–26, citing *Donovan v. Bierwirth*, 680 F.2d at 272; see also *Newton v. Van Otterloo*, 756 F. Supp. 1121, 1127–30 (N.D. Ind. 1991) (applying *Leigh*'s "three-pronged approach"); *Danaher Corp. v. Chicago Pneumatic Tool Co.*, 635 F. Supp. 246, 250 (S.D.N.Y. 1986) (doubting "the appropriateness of [a] chief executive officer continuing in his position of ESOP trustee during [a] takeover attempt" that was favored by current beneficiaries at the expense of potential future beneficiaries).

These cases illustrate how courts have adapted ERISA's fiduciary rules to account for the exception allowing for dual-hat director and officer fiduciaries. Courts have even applied these adapted fiduciary rules in cases involving ESOP valuations much like the one at issue in this case. In *Donovan v. Cunningham*, for example, the Fifth Circuit applied *Donovan v. Bierwirth*'s approach in a case where an ESOP trustee who was also a corporate officer participated in the valuation of corporate stock for an ESOP purchase. 716 F.2d 1455 (5th Cir. 1983). The court recognized that "the stringent prophylactic rules of the common law cannot be incorporated reflexively under" ERISA, *id.* at 1466–67, but that ERISA's exception allowing ESOPs to purchase employer stock for "adequate consideration" must still be interpreted to imply an exacting duty of prudence for dual-hat fiduciaries with potential conflicts of interest. *Id.* at 1467 & n.27.

The Fifth Circuit reaffirmed this principle in a case where dual-hat directors and officers were involved in an ESOP's purchase of company stock at an inflated price. *Perez v.*

*Bruister*, 823 F.3d 250, 262–63 (5th Cir. 2016) ("The trustees did not separate Bruister's personal interests from Donnelly's valuation process so as to avoid a conflict of interest. Their breach of the duty of loyalty turns on their failure to place the interests of participants and beneficiaries first"; to prove ESOP purchase was "prudent", "care must be taken to avoid any identified conflicts of interest"); see also *Howard v. Shay*, 100 F.3d 1484, 1488–89 (9th Cir. 1996) (citing *Donovan v. Bierwirth* and *Leigh v. Engle* and holding that dual-hat fiduciaries violated their ERISA duties of care and loyalty when ESOP sold undervalued shares back to the dual-hat company president).

4. *Preemption Implications*

These cases inform our preemption holding as to the directors and officers in this case. Congress explicitly departed from the common law to allow directors and officers to serve as ERISA fiduciaries despite their dual loyalties. These permissible dual loyalties weigh in favor of allowing parallel corporation-law liability against the directors and officers in this case. If parallel liability were preempted, the directors and officers would in effect cease to be corporate fiduciaries when carrying out their ERISA fiduciary roles. That result would contravene § 408(c)(3)'s mandate that ERISA not be construed to prevent corporate fiduciaries from also serving as ERISA fiduciaries.

Preempting the plaintiffs' corporation-law claims against the directors and officers would also thwart ERISA's purpose to protect plan assets from misuse. The third-party bankruptcy creditors in this case cannot sue under ERISA. So, assuming the plaintiffs' allegations are true, completely foreclosing their state-law claims could leave them without recourse for a fraudulent ESOP valuation that enabled insiders

to loot the company as it was sinking toward bankruptcy. Congress enacted ERISA in response to Senate investigations into "widespread looting of plan funds through sweetheart deals, kickbacks, and … cronyism," especially within the Teamsters union. Langbein, 103 Colum. L. Rev. at 1324. It would be odd if ERISA operated to shield similar fraudulent activity in this case. "ERISA was not intended as a device to permit corporate directors and officers to defraud with impunity corporate shareholders and creditors." *Smith*, 421 A.2d at 1114.

Preempting all of plaintiffs' claims could also frustrate congressional intent by discouraging ESOP formation. It could be rational for creditors to demand higher interest rates or more security for loans to ESOP-owned companies to account for the risk that directors and officers might abuse the corporation without any recourse for creditors under corporation law. In the healthcare arena, courts have relied on a similar concern in refusing to preempt negligent misrepresentation claims by third-party hospitals against ERISA plan insurers. See *Lordmann*, 32 F.3d at 1533, citing *Memorial Hospital Sys.*, 904 F.2d at 246 ("If ERISA preempts [hospitals'] potential causes of action for misrepresentation, health care providers can no longer rely as freely and must either deny care or raise fees…. In that event, the employees whom Congress sought to protect would find medical treatment more difficult to obtain.").

Finally, allowing plaintiffs to pursue their claims under corporation law against the directors and officers should not disrupt national uniformity in plan administration. The familiar "internal affairs" doctrine is a conflict of laws principle that recognizes that only one state should have authority to

regulate a corporation's internal affairs, including fiduciary duties of directors and officers. See *LaPlant v. Northwestern Mutual Life Ins. Co.*, 701 F.3d 1137, 1139 (7th Cir. 2012), citing *Edgar v. MITE Corp.*, 457 U.S. 624, 645 (1982); *Treco, Inc. v. Land of Lincoln Sav. & Loan*, 749 F.3d 374, 377 (7th Cir. 1984); Restatement (Second) of Conflict of Laws § 302, cmts. a & e (1971).

Our holding as to the directors and officers is limited to the plaintiffs' particular claims in this case, which would impose corporate liability that runs parallel to, not in conflict with, ERISA's fiduciary duties. By that we mean that the directors and officers' corporation-law and ERISA duties both prohibit the fraudulent conduct alleged by plaintiffs. ERISA expressly contemplates such parallel liability for dual-hat directors and officers.

We agree with the Fifth Circuit's prediction in *Sommers Drug Stores* that a director's state-law and ERISA duties will often run parallel, so that duties to shareholders require the same conduct as the duties to ERISA beneficiaries. See *Sommers Drug Stores*, 793 F.2d at 1468. In cases like this one, where shareholders and beneficiaries are both suing the directors and officers for the same conduct, if shareholders can recover then ERISA beneficiaries likely can as well. ERISA's trust duty "imposes a standard of care at least as high as that imposed by the director-shareholder duty." *Id.* at 1468–69; see also Wohl, 20 U. Dayton L. Rev. at 78 n.139 (when dual-hat directors and officers face "questions from the corporation's shareholders," they "will find at least some protection by virtue of the business judgment rule"). If a dual-hat director or officer's duties irreconcilably conflict, however, the director or officer "might have to resign one position or

the other," *Sommers Drug Stores*, 793 F.2d at 1469. And if he or she does not, ERISA's federal duties will trump conflicting corporation-law duties. Here, the plaintiffs are pursuing parallel corporation-law claims against dual-hat directors and officers, so ERISA does not preempt those claims.

IV. *Argent Trust Company*

The plaintiffs' Count V aiding and abetting claims against Argent Trust Company (Argent) are a different matter. These claims are preempted because ERISA does not permit states to dilute the exclusive benefit rule further, beyond its narrow exception for dual-hat directors and officers.

Unlike the directors and officers, Argent is a "single-hat" ERISA fiduciary. It has no state-law duty of loyalty to the corporation. Still, the plaintiffs seek to extend corporation-law liability to Argent through an aiding and abetting theory.[2] Aiding and abetting a breach of a fiduciary duty is a well-established tort. See Restatement of Torts (Second) § 874, cmt. c (1979). Yet it is expansive in that it requires any third party working with a corporate fiduciary to be alert to the fiduciary's special duties and to avoid knowingly giving aid to a breach. In this respect, aiding and abetting claims use

---

[2] The parties dispute whether Wisconsin or Delaware law applies. We need not resolve that question because both states impose liability on parties who knowingly aid and abet a corporate fiduciary's breach of duty. See *Burbank Grease Servs., LLC v. Sokolowski*, 294 Wis. 2d 274, 304, 717 N.W.2d 781, 796 (2006) ("If a duty of loyalty exists, and a third party encourages and profits from a breach of the duty of loyalty, a claim for aiding and abetting the breach will lie."); *Gotham Partners, L.P. v. Hallwood Realty Partners, L.P.*, 817 A.2d 160, 172 (Del. 2002) (stating elements of a claim for aiding and abetting a breach of fiduciary duty under Delaware law).

directors and officers' corporation-law duties as a foundation for a wider layer of tort liability reaching third parties.

States are usually within their rights to impose aiding and abetting liability on third parties. However, ERISA preempts such liability when it comes to third parties like Argent who are subject to exclusive federal duties to act solely in the interest of beneficiaries. Unlike with dual-hat directors and officers, ERISA does not contemplate single-hat fiduciaries owing any parallel duties to the corporation—even a limited duty not to aid and abet breaches against the corporation.

The prospect of aiding and abetting liability in this case simply creates too great a risk that single-hat ERISA fiduciaries like Argent would be forced to worry about whether directors and officers were complying with separate corporation-law duties. This would interfere with the single-minded focus on the plan and its beneficiaries that ERISA's exclusive benefit rule prescribes for fiduciaries like Argent. In particular, the conflicts of interest that plague dual-hat directors and officers would suddenly infect single-hat entities, as well. Imagine, for example, an ERISA fiduciary worrying whether it would be aiding a breach of fiduciary duty simply by convincing a dual-hat director or officer to approve a plan decision that favors beneficiaries at the expense of company profits.

Such conflicts of interest are challenging enough when they affect only the directors and officers. They can paralyze efficient plan administration. "[W]ith the strict common-law standard of not holding conflicting offices removed by ERISA, it is very difficult for an ERISA fiduciary to be assured of a benign assessment by third parties of the motivational factors underlying the fiduciary's act." Wohl, 20 U. Dayton L. Rev. at

48–49. As a result, "the fiduciary may be reluctant to act" even where no malfeasance is afoot. *Id.* at 49. These problems are most likely to arise in cases like this one involving failing companies. Langbein & Fischel, 55 U. Chi. L. Rev. at 1132 (In cases involving "plant closings or in corporate reorganizations …, the gains from self-interested action by nonneutral fiduciaries may outweigh the usual … costs. It is for this reason, we suspect, that the contested plan administration cases so often arise when the incentives of the long term relationship" between employer and employees "are attenuated").

Such conflicts of interest are exactly what ERISA's exclusive benefit rule is meant to prevent. So while ERISA explicitly tolerates some conflicts among directors and officers, both the text and purpose of ERISA's exclusive benefit rule make clear that courts should resist any further dilution through state-law aiding and abetting claims that would effectively force a second hat onto single-hat ERISA fiduciaries. Cf. *UNUM Life Ins. Co. of Am. v. Ward*, 526 U.S. 358, 378–79 (1999) (ERISA preempted state-law doctrine deeming employer an agent of insurer; state-law rule would force the employer, "as plan administrator, to assume a role, with attendant legal duties and consequences, that it has not undertaken voluntarily" under ERISA).

We recognize that "aiding and abetting" liability against Argent would impose liability only for intentionally fraudulent conduct. It is therefore unlikely that the conduct prohibited by state law—aiding a fraud—would be something that Argent's corollary ERISA duties require or even allow. In fact, ERISA beneficiaries, participants, and fiduciaries can sue Argent under ERISA for knowingly aiding the directors and officers' alleged breaches of their ERISA

duties. See 29 U.S.C. § 1105(a)(1) ("a fiduciary … shall be liable for a breach of fiduciary responsibility of another fiduciary … if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach"). As with the directors and officers, then, state-law liability against Argent would run parallel to Argent's ERISA liability. But, again, the key difference is that the exclusive benefit rule preempts such parallel state-law liability outside the narrow and unavoidable exception for dual-hat directors and officers.

Indeed, the preeminence of ERISA's exclusive benefit rule is what distinguishes the aiding and abetting claims against Argent from other non-preempted, "run-of-the-mill" tort claims brought against single-hat ERISA fiduciaries. See *Mackey*, 486 U.S. at 833. In *Mackey*, the Supreme Court recognized that claims for ordinary torts allegedly committed by ERISA fiduciaries are often not preempted. *Id.* ("lawsuits against ERISA plans for run-of-the-mill state-law claims such as unpaid rent, failure to pay creditors, or even torts committed by an ERISA plan—are relatively commonplace…. [T]hese suits, although obviously affecting and involving ERISA plans and their trustees, are not pre-empted by ERISA § 514(a).").

Accordingly, courts have permitted many tort claims against ERISA fiduciaries even when the tortious conduct occurred in the context of plan activity. See *Mackey*, 486 U.S. at 833 n.8 (collecting cases); see also, e.g., *Franciscan Skemp*, 538 F.3d at 601 (third-party hospital's negligent misrepresentation claim against ERISA plan insurer was not completely preempted); *Dishman v. UNUM Life Ins. Co. of Am.*, 269 F.3d 974, 979–84 (9th Cir. 2001) (beneficiary could pursue invasion

of privacy tort against ERISA plan insurer for actions taken to investigate benefits claim); *Lane v. Goren*, 743 F.2d 1337, 1340 (9th Cir. 1984) (beneficiary could pursue state-law race and age discrimination claims against ERISA fiduciaries).

In those and other "run-of-the-mill" cases, however, the plaintiffs were either (1) beneficiaries who suffered torts unrelated to their ERISA rights, as in *Dishman* and *Lane*, or (2) true third parties, such as the hospital in *Franciscan Skemp* or the outside creditors in *Mackey*. State-law liability *to the beneficiaries* in *Dishman* and *Lane* thus did not risk distracting fiduciaries from their single-minded focus on beneficiaries. And in *Franciscan Skemp* and *Mackey*, because liability flowed to third parties, there was no risk of dividing single-hat fiduciaries' allegiance between the beneficiary and her corporate employer—the foremost entity that ERISA fiduciaries are not supposed to serve.

Here, however, the injured plaintiff *is* the corporate employer. Parallel state-law liability would foster just the sort of dual loyalty that the exclusive benefit rule prohibits. The plaintiffs in this case are bankruptcy creditors, not the corporation itself, but they are suing on behalf of the corporate employer for alleged breaches of duties owed to the corporation before the bankruptcy. So, unlike in *Mackey*-type cases, the aiding and abetting claims against Argent here would in fact impose on single-hat fiduciaries new state-law duties to the corporate employer. Such liability is fundamentally at odds with the text and purpose of ERISA's exclusive benefit rule and is therefore preempted.

V. *Stout Risius Ross*

The preemptive force of ERISA's exclusive benefit rule also protects the Stout Risius Ross defendants (Stout) from corporate aiding and abetting liability even though Stout is not a fiduciary under ERISA. Like Argent, Stout is not a dual-hat director or officer for whom ERISA contemplates parallel corporate liability. Argent hired Stout for its expertise in aiding the ESOP valuation process. In this role, Stout owed no fiduciary duties to the corporation or to ERISA beneficiaries.

This means Stout is not subject to the exclusive benefit rule. So at first glance, parallel non-fiduciary liability against Stout under both ERISA and state law would seem not to conflict with the exclusive benefit rule. But upon closer inspection, Stout is situated more similarly to Argent than to the directors and officers when it comes to preemption. Three considerations point to this conclusion. First, to protect Argent's single-minded focus on beneficiaries, it is also necessary to protect its contractor, Stout, whose involvement in the ESOP valuation stemmed solely from Argent's trustee duties. Second, given Stout's role in the ESOP valuation process, parallel state liability to the corporation would conflict with Stout's non-fiduciary obligations to beneficiaries when performing core ERISA functions. Third, state-law liability for Stout could lead to a damages remedy that would arguably conflict with ERISA's remedial limits on claims against non-fiduciaries. So, while the question is a closer call, ERISA also preempts the plaintiffs' aiding and abetting claims against Stout.

In assessing the state-law claims against Stout, it is first important to clarify that, although Stout is not a fiduciary under ERISA, it still had federal-law obligations under ERISA when serving as Argent's contractor. Specifically, under

ERISA §§ 502(a)(5) & (*l*), 29 U.S.C. §§ 1132(a)(5) & (*l*), Stout can be sued by the Secretary of Labor for knowingly aiding an ERISA fiduciary's breach of its duties to beneficiaries. See *Harris Tr. & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 248 (2000) ("the Secretary may bring a civil action under § 502(a)(5) against an 'other person' who 'knowing[ly] particip[es]' in a fiduciary's violation"), quoting 29 U.S.C. § 1132(*l*). Thus, under ERISA, Stout must concern itself with Argent's and the directors and officers' fiduciary duties to beneficiaries so as not to participate knowingly in a violation.[3]

Because Stout incurs ERISA liability if it knowingly aids a breach of fiduciary duty, Stout was acting in a limited single-hat ERISA role when aiding the ESOP valuation process as Argent's contractor. Stout was obligated under ERISA to avoid aiding Argent's or the directors and officers' alleged

---

[3] While the Secretary's cause of action against Stout suffices in this case to illustrate Stout's non-fiduciary obligations to beneficiaries under ERISA, whether *private parties* could similarly sue Stout under § 502(a)(3) for aiding a fiduciary's breach of duty remains undecided in our circuit. The logic of *Harris* suggests they can. *Harris* held that private parties could sue non-fiduciaries under § 502(a)(3) for knowingly aiding a prohibited transaction under § 406. 530 U.S. at 248–49. And *Harris*'s reasoning would seem to extend equally to a § 404 fiduciary duty claim. See *id.* (allowing § 502(a)(3) claim because Congress intended beneficiaries' cause of action to match the Secretary's cause of action under § 502(a)(5)). See also *Daniels v. Bursey*, 313 F. Supp. 2d 790, 807–08 (N.D. Ill. 2004) (extending *Harris*'s logic to a claim alleging participation in a breach of fiduciary duty). Nevertheless, even after *Harris*, some circuits have continued to hold that a non-fiduciary's participation in a breach of fiduciary duty is not actionable under § 502(a)(3). See *Renfro v. Unisys Corp.*, 671 F.3d 314, 325 (3d Cir. 2011); *Gerosa v. Savasta & Co.*, 329 F.3d 317, 322–23 (2d Cir. 2003). We need not and do not decide this issue here. See *Gordon v. CIGNA Corp.*, 890 F.3d 463, 477 n.2 (4th Cir. 2018) (flagging but not deciding this issue).

breaches. For three reasons, this obligation imposed on Stout under ERISA preempts the plaintiffs' attempt to impose additional duties on Stout based on aiding and abetting liability to the corporation.

First, to ensure Argent's single-minded focus as an ERISA fiduciary, that single-minded focus must also extend to Stout, whom Argent hired to help perform core trustee functions. Stout's involvement in this case stems solely from Argent's single-hat trustee duties. Argent hired Stout for its expertise to help Argent with the ESOP valuation process. If state law could burden Argent's contractors with liability to the corporation, that would hinder Argent's ability as trustee to hire trusted experts whose thinking is not clouded with concerns about recommending actions to directors and officers that might be contrary to the corporation's interests. Hence, to protect Argent's ability to act for the exclusive benefit of beneficiaries, it becomes important also to prevent the expansion of dual-hat loyalties to non-fiduciary contractors like Stout. Otherwise, ERISA fiduciaries may not be able to confide fully in non-fiduciary contractors to help perform core trustee duties with an eye single to beneficiaries.

Second, and most simply, given Stout's key role in the ESOP valuation process, ERISA's focus on protecting beneficiaries weighs against permitting corporate aiding and abetting liability against Stout. Like Argent, Stout is not locked into the (potentially) conflicting dual roles that ERISA accepts for directors and officers. So, as with Argent, there is no need under ERISA to tolerate state laws that impose corporation-law liability on non-fiduciary contractors who perform central ERISA functions such as ESOP valuations. Stout's services were central to plan administration—preparing the

independent valuation of the ESOP's holdings. As with Argent, then, when performing such core plan tasks, Stout's federal ERISA obligations should not be muddled with distracting and potentially conflicting state-law obligations to the corporation. Such liability rules would affect central matters of plan administration in a manner not consistent with ERISA, and would thus "relate to" an ERISA plan, 29 U.S.C. § 1114(a). See, e.g., *Egelhoff*, 532 U.S. at 147 (state rule requiring administrators to pay benefits to beneficiaries chosen by state law was not consistent with ERISA's rule that benefits be paid to those identified in plan documents).

Last, state-law liability against Stout could lead to a damages remedy that is arguably in tension with ERISA's remedial limits on claims against non-fiduciaries. As mentioned above, the Secretary of Labor can sue a non-fiduciary like Stout under § 502(a)(5) for knowingly participating in a breach of duty. Yet, like beneficiaries' private cause of action under § 502(a)(3), the Secretary's cause of action under § 502(a)(5) is limited to "equitable relief." As a result, ERISA does not authorize suits for damages against non-fiduciaries who knowingly participate in a fiduciary's breach of fiduciary duty. See *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 260–61 (1993) (explaining that even the Secretary's ability to assess civil penalties against non-fiduciaries under § 502(*l*) does not "establish[] the existence of a damages remedy" against non-fiduciaries, but rather counts as "equitable relief" under § 502(a)(5)).

*Mertens*'s equitable limit on Stout's potential ERISA liability produces some additional tension in this case between plaintiffs' state-law damages claims against Stout and ERISA's remedial scheme. Although *Mertens* applies only

to ERISA claims, it would be odd if the corporation could obtain remedies against Stout that could not be sought by the Secretary of Labor on behalf of similarly injured beneficiaries. That result could give non-fiduciaries like Stout incentives to be more attentive to the corporation than to beneficiaries. Such an effect would undermine ERISA's purpose of ensuring that ERISA fiduciaries and their contractors focus first and foremost on the interests of plan beneficiaries—not the corporation. For all these reasons, we find that ERISA also preempts the plaintiffs' state-law claims against Stout.

*Conclusion*

The exclusive benefit rule is a cornerstone of ERISA that state law cannot dilute. While ERISA narrowly contemplates parallel liability against the dual-hat director and officer defendants, it preempts further aiding and abetting liability that would impose additional duties on Argent and Stout beyond their exclusive ERISA obligations. We therefore REVERSE the dismissal of Counts I–IV and Counts VII and VIII against the directors and officers and AFFIRM the dismissal of Counts V and VI against Argent and Stout and REMAND the case for further proceedings consistent with this opinion.