IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

ROGER NAUMANN, et al., *Plaintiffs/Appellants,*

*v.*

BENEFIT STRATEGIES WEST, INC., et al., *Defendants/Appellees.*

No. 1 CA-CV 20-0537
FILED 4-21-2022

Appeal from the Superior Court in Maricopa County
No.  CV2019-096473
The Honorable Daniel G. Martin, Judge

**VACATED AND REMANDED**

COUNSEL

Gordon Rees Scully Mansukhani, LLP, Phoenix
By Daryl R. Wilson
*Counsel for Plaintiffs/Appellants*

Evans Dukarich LLP, Tempe
By Steven L. Evans, Gary Dukarich, Nicholas J. Kuntz, Michael D. Malin
*Counsel for Defendants/Appellees*

---

## OPINION

Judge Brian Y. Furuya delivered the opinion of the Court, in which Chief Judge Kent E. Cattani and Judge Samuel A. Thumma joined.

---

**F U R U Y A**, Judge:

¶1          Plaintiffs Roger and Cheryl Naumann (the "Naumanns") appeal the dismissal of their three common law claims, which the superior court found were preempted by the federal Employee Retirement Income Security Act of 1974 ("ERISA"), codified at 29 U.S.C. §§ 1001–1461. For the following reasons, we vacate the dismissal of their complaint and remand.

### FACTS AND PROCEDURAL HISTORY

¶2          The Naumanns own and operate the Second Home Pet Resort, L.L.C. (the "SHPR"). They retained David Rosenthal to provide investment advice for SHPR. Rosenthal recommended creation of a pension plan (the "Plan") for the benefit of the Naumanns and SHPR employees. Rosenthal recommended the Naumanns hire Janet Odenwald, the principal owner and professional of Benefit Strategies West, Inc. ("BSW"), to set up and administer the Plan. The Naumanns hired BSW and established the Plan effective January 2013.

¶3          The Naumanns served as trustees of the Plan, while BSW (with Odenwald as the primary service provider) served as the third-party administrator. The Naumanns relied upon calculations performed by Odenwald and BSW to determine the contributions to be made to the Plan and to protect Plan participants' interests. The Naumanns also relied on recommendations by Odenwald and BSW to maximize tax benefits. By mid-2018, the Naumanns had contributed over $235,000 to the Plan.

¶4          After Odenwald died, the Naumanns learned that the Plan was underfunded by at least $460,000. In 2019, the Naumanns sued Odenwald's estate (the "Estate") and others, but not BSW, in federal district court, alleging Odenwald breached a fiduciary duty under ERISA by failing to provide accurate Plan contribution calculations, which resulted in underfunding of the Plan. The Estate moved to dismiss, claiming Odenwald and BSW provided ministerial services and thus owed no fiduciary duty under ERISA. Relying on a stipulation of the parties that

neither Odenwald nor BSW were fiduciaries under ERISA, the district court dismissed the complaint against the Estate with prejudice, adding that the personal representative of the Estate, BSW "and any other related persons or parties not named in this case are dismissed with prejudice as to any federal law claims that have been or could have been brought and without prejudice to any state law claims."

¶5　　　　The Naumanns then filed this case in superior court against the Estate and BSW (the "Defendants"). The Naumanns alleged three Arizona common law claims: (1) BSW breached its contract "by providing inaccurate calculations of Plan contributions"; (2) the Defendants breached an implied warranty "to perform the contract with care and diligence and in a reasonable, non-negligent manner . . . by failing to perform their contractual obligations in a reasonable and non-negligent manner"; and (3) the Defendants committed professional negligence by failing to provide accurate Plan contribution calculations.

¶6　　　　The Defendants moved to dismiss, arguing the Naumanns' claims were barred by express and conflict preemption under ERISA. Attaching the federal court stipulation, the Defendants argued the Naumanns' claims "are inextricably bound to the ERISA framework and are inherently swept aside by the exclusive authority of ERISA." After briefing and oral argument, the superior court found ERISA preempted the Naumanns' claims and dismissed the complaint.

¶7　　　　Following entry of final judgment, the Naumanns timely appealed, and we have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") §§ 12-120.21(A)(1) and -2101(A)(1).

## DISCUSSION

### I.　　Standard of Review

¶8　　　　We review the dismissal of a complaint for lack of subject matter jurisdiction de novo. *Satterly v. Life Care Ctrs. of Am., Inc.*, 204 Ariz. 174, 177, ¶ 5 (App. 2003). Whether ERISA preempts a state law claim is a legal issue also subject to de novo review. *Id.* We assume the truth of the well-pled factual allegations in the complaint and indulge all reasonable inferences therefrom. *Cullen v. Auto-Owners Ins. Co.*, 218 Ariz. 417, 419, ¶ 7 (2008).

II.      **ERISA Overview & Preemption**

**¶9**          It is undisputed that the Plan is governed by ERISA. *See* 29 U.S.C. § 1003. ERISA is an "intricate, comprehensive" statute governing employee benefit plans, including pension and welfare plans. *Boggs v. Boggs*, 520 U.S. 833, 839, 841 (1997); *see* 29 U.S.C. § 1001. ERISA's regulatory scheme is designed to safeguard the establishment, operation, and administration of employee benefit plans by setting forth minimum standards to assure the "equitable character of such plans and their financial soundness." *Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355, 364 (2002) (citing 29 U.S.C. § 1001(a)). ERISA provides "appropriate remedies, sanctions, and ready access" to federal courts when ERISA administrators fail to comply with such standards. *See Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004); *Boggs*, 520 U.S. at 839; 29 U.S.C. § 1001(b).

**¶10**          In order "to afford employers the advantages of a uniform set of administrative procedures governed by a single set of regulations," *Fort Halifax Packing Co., Inc. v. Coyne*, 482 U.S. 1, 11 (1987), ERISA contains "expansive pre-emption provisions, . . . which are intended to ensure that employee benefit plan regulation [be] 'exclusively a federal concern,'" *Aetna Health Inc.*, 542 U.S. at 208 (quoting *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 523 (1981)). Although broad, ERISA preemption is not limitless and does not apply to every instance where ERISA and state law happen to intersect. Rather, preemption of state law occurs when a state law claim expressly relates to an ERISA employee benefit plan, known as "express preemption," or when it conflicts with ERISA's prescribed civil enforcement regimes, known as "conflict preemption." *See Rutledge v. Pharm. Care Mgmt. Ass'n*, 141 S. Ct. 474, 476, 479–83 (2020); *Rush Prudential HMO, Inc.*, 536 U.S. at 364, 375–80; *Paulsen v. CNF Inc.*, 559 F.3d 1061, 1081 (9th Cir. 2009). As such, we must determine whether the Naumanns' three Arizona common law claims, based on the allegation that the Defendants improperly calculated the amount needed to properly fund the Plan, are preempted by ERISA under express or conflict preemption.

**¶11**          When evaluating whether Arizona law is preempted by ERISA, we must consider "ERISA's objectives 'as a guide to the scope of the state law that Congress understood would survive.'" *Rutledge*, 141 S. Ct. at 480 (quoting *Cal. Div. of Lab. Standards Enf't v. Dillingham Constr., N.A., Inc.*, 519 U.S. 316, 325 (1997)). Thus, "congressional intent is relevant to the preemption analysis." *Bafford v. Northrop Grumman Corp.*, 994 F.3d 1020, 1031 (9th Cir. 2021); *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 45 (1987).

III.   **ERISA Does Not Expressly Preempt the Naumanns' State Law Claims**

¶12      ERISA expressly preempts "any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan" covered by ERISA. 29 U.S.C. § 1144(a) (emphasis added). "'A state law relates to an ERISA plan if it has a connection with or reference to such a plan.'" *Rutledge*, 141 S. Ct. at 479 (quoting *Egelhoff v. Egelhoff*, 532 U.S. 141, 147 (2001)).

   *A.     The Naumanns' State Law Claims Do Not Have "an Impermissible Connection With" the Plan.*

¶13      Not every potential connection with a state law will run afoul of ERISA's express preemption provision. As the United States Supreme Court observed in *Rutledge*, ERISA is:

> primarily concerned with pre-empting laws that require providers to structure benefit plans in particular ways, such as by requiring payment of specific benefits, or by binding plan administrators to specific rules for determining beneficiary status, [or] . . . if acute, albeit indirect, economic effects of the state law force an ERISA plan to adopt a certain scheme of substantive coverage.

*Rutledge*, 141 S. Ct. at 480 (citations and internal quotation marks omitted). Accordingly, a state law claim has "an impermissible connection with" an ERISA plan if the applicable state law "governs a central matter of plan administration or interferes with nationally uniform plan administration." *Id.* at 476, 480 (citing *Gobeille v. Liberty Mut. Ins. Co.*, 577 U.S. 312, 320 (2016)). "Crucially, not every state law that affects an ERISA plan or causes some disuniformity in plan administration has an impermissible connection with an ERISA plan." *Id.*

¶14      Here, the Naumanns' state law claims do not "govern[] a central matter of plan administration" but rather concern a professional services contract with a third-party administrator to perform, in relevant part, non-discretionary, ministerial tasks; namely, calculating contributions "according to the Plan terms" to guide the Naumanns in sufficiently funding the Plan. *See Rutledge*, 141 S. Ct. at 480; *Bafford*, 1024–1028, 1032.

¶15      Likewise, there is nothing in the record indicating the Naumanns' state law claims would "interfere[] with nationally uniform plan administration." *Rutledge*, 141 S. Ct. at 480. The Naumanns' Arizona common law claims against the Defendants regarding calculation of

contributions to fund the Plan would not in any way affect (let alone interfere with) ERISA-related plan administration, nationally, locally, or otherwise.

**¶16**        The Ninth Circuit additionally employs a "relationship test" in analyzing the "connection with" inquiry, under which ERISA preempts a state law claim where that "claim bears on an ERISA-regulated relationship." *Paulsen*, 559 F.3d at 1082–83. Such relationships include, for example, those between a (1) plan and plan member, (2) plan and employer, (3) employer and employee, and (4) plan and trustee. *Id.* (citations omitted).

**¶17**        Here, no such relationship exists between the Naumanns and the Defendants. Instead, the Naumanns are suing a third-party service provider that performed, as relevant here, the non-discretionary, ministerial task of calculating Plan contributions according to Plan terms. *See Bafford*, 994 F.3d at 1031–32. ERISA does not "purport to regulate those relationships where a plan operates just like any other commercial entity — for instance, the relationship between the plan and its own employees, or the plan and its insurers or creditors, or the plan and the landlords from whom it leases office space." *Paulsen*, 559 F.3d at 1083. As in *Paulsen*, the state law claims here may "[a]t most . . . interfere with a relationship between the plan and its third-party service provider," meaning they are not preempted by ERISA. *Id.* Therefore, the Naumanns' state law claims bear no impermissible connection with their Plan under either *Rutledge* or *Paulsen*.

**¶18**        The Ninth Circuit's recent decision in *Bafford v. Northrop Grumman Corp.* supports this conclusion. 994 F.3d 1020 (9th Cir. 2021). In *Bafford*, Northrop Grumman Corporation sponsored an employee pension plan governed by ERISA. *Id.* at 1024. Hewitt Associates L.L.C. ("Hewitt"), in turn, provided "outside administrative services" for the plan, including providing plan participants estimates of what their monthly pension benefits would be upon retirement. *Id.* at 1024–25. Hewitt's estimates, however, overestimated the benefits certain participants would receive upon their retirement. *Id.* After the *Bafford* plaintiffs, who were plan participants, retired, they learned Hewitt's estimates were wrong. *Id.* The *Bafford* plaintiffs sued Hewitt for breach of fiduciary duties under ERISA and professional negligence and negligent misrepresentation under state law for the miscalculation of their benefits, with the district court dismissing all claims. *Id.* at 1024–28, 1030–32.

**¶19**        On appeal, the *Bafford* court found that calculation of benefits pursuant to a plan formula is not a fiduciary function, but a "ministerial

function that does not have a fiduciary duty attached to it," and thus affirmed the dismissal of the plaintiffs' breach of fiduciary duty claim. *Id.* at 1024–28, 1032. But it further held that ERISA did not expressly preempt the plaintiffs' state law claims against Hewitt. *Id.* at 1030–32.

**¶20** Analyzing the "connection with" prong, the *Bafford* court explained that a state law claim is preempted under that ground if it "bears on an ERISA-regulated relationship," such as the relationship between the plan and its members, between the plan and the employer, or between the employer and its employees. *Id.* at 1031–32; *see Paulsen*, 559 F.3d at 1082–83. Because Hewitt's duty giving rise to the negligence claims did not arise out of any of those relationships but rather "from a third-party actuary, *i.e.*, a non-fiduciary service provider, to the plan participants as intended third party beneficiaries of the actuary's service contract," the claims did not have an impermissible connection with the ERISA plan. *Bafford*, 994 F.3d at 1031–32 (citing *Paulsen*, 559 F.3d at 1083).

**¶21** Here, as in *Bafford*, the Naumanns, acting as trustees for the Plan, engaged an outside administrative service provider—BSW—to assist with calculating Plan contributions. As in *Bafford*, BSW provided incorrect calculations regarding contributions to be made to sufficiently fund the Plan. This failure resulted in a substantial underfunding of the Plan, which in turn allegedly caused loss of retirement and tax benefits. The Naumanns sued the Estate in federal court, alleging breach of fiduciary duty, but ultimately were compelled to abandon that claim because, as explained in *Bafford*, third-party administrators do not generally owe fiduciary duties under ERISA for ministerial actions, such as performing calculations according to a plan formula. *See id.* at 1024–1028, 1032. Also parallel to *Bafford*, the superior court dismissed the Naumanns' state law claims against the third-party administrator as preempted by ERISA. But *Bafford* clarifies that asserting state law claims against those performing a ministerial function does not impact any fiduciary relationship or duty that would invoke ERISA's express preemption as intended by Congress. *See id.*

**¶22** To the contrary, the *Bafford* court observed that "[h]olding both that Hewitt's calculations were not a fiduciary function and that [the plaintiffs'] state-law claims are preempted would deprive [p]laintiffs of a remedy for the wrong they allege without examination of the merits of their claim." *Id.* at 1031. As in *Bafford*, "there is no 'ERISA-related purpose that denial of a remedy would serve' in this instance." *Id.* at 1031 (quoting *Varity Corp. v. Howe*, 516 U.S. 489, 515 (1996)). Thus, the Naumanns' state law claims have no impermissible connection with the Plan that would warrant express preemption under ERISA.

>   B.   *The Naumanns' State Law Claims Do Not Have an Impermissible "Reference To" the Plan.*

¶23     A state law claim has an impermissible "reference to" an ERISA plan if the state law at issue "acts immediately and exclusively upon ERISA plans" or "the existence of ERISA plans is essential to the law's operation." *Rutledge*, 141 S. Ct. at 478, 481, 483 (citation omitted); *accord Cal. Div. of Lab. Standards Enf't*, 519 U.S. at 325; *Bafford*, 994 F.3d at 1031.

¶24     Where state laws regulate "areas where ERISA has nothing to say," even when they have "incidental effect on ERISA plans," those state law claims are not preempted by ERISA. *Egelhoff*, 532 U.S. at 147–48. Here, the Naumanns' state law claims do not necessarily turn on the Plan itself but on whether the Defendants provided accurate contribution calculations to the Naumanns.

¶25     *Bafford* is again instructive. Analyzing the "reference to" inquiry, the *Bafford* court explained that because the plaintiffs' negligence claims against Hewitt were based on state common law negligence principles and state statute, which did not act immediately and exclusively on ERISA plans, nor was the existence of an ERISA plan essential to the operation of those laws, the claims did not have an impermissible reference to the ERISA plan. *Bafford*, 994 F.3d at 1031–32 (citing *Paulsen*, 559 F.3d at 1082).

¶26     Similarly, the Naumanns' contract and negligence claims here do not immediately or exclusively act upon the Plan. Instead, they are based on Arizona law that long pre-dates ERISA and is not reliant on an ERISA plan or ERISA itself for its operation. *See, e.g.*, *Kain v. Ariz. Copper Co.*, 14 Ariz. 566, 569–73 (1913) (breach of contract); *Bartlett-Heard Land & Cattle Co. v. Harris*, 28 Ariz. 497, 504 (1925) (common law breach of warranty); *Butler v. Rule*, 29 Ariz. 405, 416 (1926) (common law malpractice/professional negligence claims). As such, the Naumanns' state law claims make no impermissible reference to their Plan.

¶27     Because the Naumanns' three state law claims have neither an impermissible "connection with," nor an impermissible "reference to," the Plan, we conclude that those claims are not expressly preempted by ERISA.

IV.   **The Naumanns' State Law Claims Are Not Subject to Conflict Preemption**

¶28     The civil enforcement provisions in ERISA list those entities that may file civil actions, *see* 29 U.S.C. § 1132(a)(1)–(11), and include

thirteen avenues of relief that plan participants or beneficiaries may specifically seek in court, *see* 29 U.S.C. § 1132(a)(1)(A)–(B), (c)(1)–(12). Where state law claims would conflict with any of the prescribed enforcement provisions, conflict preemption applies. *See Rush Prudential HMO, Inc.*, 536 U.S. at 375–80; *Paulsen*, 559 F.3d at 1081. "Conventional conflict pre-emption principles require pre-emption where compliance with both federal and state regulations is a physical impossibility, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress [in enacting ERISA]." *Boggs*, 520 U.S. at 844 (internal quotation omitted).

**¶29**         Here, there is no such conflict. ERISA's civil enforcement scheme does not provide relief for any of the state law claims asserted by the Naumanns. As the Naumanns have conceded, the Defendants do not owe any ERISA-derived fiduciary duties to the Naumanns concerning the calculation of Plan contributions according to Plan terms. *See Bafford*, 994 F.3d at 1024–1028, 1032. Similarly, ERISA's civil enforcement provisions do not directly provide relief for breach of a third-party administrator's professional services contract or negligent performance of a non-fiduciary service under that contract. *See* 29 U.S.C. § 1132. As a result, federal and state law do not conflict, and compliance with both is the norm, not a "physical impossibility." *Boggs*, 520 U.S. at 844 (citation omitted). For these same reasons, Arizona's common law is not an obstacle to the full and complete implementation of ERISA. Indeed, dismissal of the Naumanns' ERISA claims because the Defendants' calculations were not a fiduciary function and also holding that the state law claims were preempted "would deprive [the Naumanns] of a remedy for the wrong they allege without examination of the merits of their claim[,] . . . [which] would be inconsistent with ERISA's purpose." *Bafford*, 994 F.3d at 1031. Therefore, the Naumanns' three state common law claims are not precluded by conflict preemption under ERISA.

## V.    **Attorneys' Fee Award**

**¶30**         In light of our decision, we vacate the superior court's award of attorneys' fees to the Defendants because they are no longer necessarily the successful party in the litigation. *See* A.R.S. § 12-341.01(A).

**¶31**         Both parties request an award of their attorneys' fees on appeal pursuant to 29 U.S.C. § 1132(g)(1), A.R.S. § 12-349, and A.R.S. § 12-341.01(A)(1). The ERISA attorneys' fees provision is inapplicable because this action was brought pursuant to Arizona state law and is not an ERISA civil enforcement action. *See* 29 U.S.C. § 1132(g)(1) (authorizing a

discretionary fee award in "any action under this subchapter," referring to ERISA's civil enforcement scheme). Further, A.R.S. § 12-349 is inapplicable as a basis to justify a fee award in this appeal. Finally, in our discretion, we deny the fee requests pursuant to A.R.S. § 12-341.01(A)(1) as premature. However, we commend to the discretion of the superior court to consider awarding to the successful party reasonable attorneys' fees, including, but not limited to, those fees expended in this appeal after a final decision on the merits of the Naumanns' claims. *Murphy Farrell Dev., LLLP v. Sourant*, 229 Ariz. 124, 134, ¶ 38 (App. 2012).

**¶32** As the successful party in this appeal, the Naumanns are entitled to their taxable costs incurred on appeal upon compliance with ARCAP 21.

## CONCLUSION

**¶33** For the foregoing reasons, neither express preemption nor conflict preemption pursuant to ERISA bars the Naumanns' three Arizona state law claims against the Defendants. Accordingly, we vacate the dismissal of the complaint and the related attorneys' fees award in favor of the Defendants, reinstate the Naumanns' complaint, and remand to the superior court for proceedings upon the merits of the Naumanns' state law claims consistent with this opinion.

