Justice KENNEDY delivered the opinion of the Court.
This case presents a challenge to the applicability of a state law requiring disclosure of payments relating to health care claims and other information relating to health care services. Vermont enacted the statute so it could maintain an all-inclusive health care database. Vt. Stat. Ann., Tit. 18, § 9410(a)(1) (2015 Cum. Supp.) (V.S.A.). The state law, by its terms, applies to health plans established by employers and regulated by the Employee Retirement Income Security Act of 1974 (ERISA), 88 Stat. 829, as amended, 29 U.S.C. § 1001 et seq. The question before the Court is whether ERISA pre-empts the Vermont statute as it applies to ERISA plans.
I
A
Vermont requires certain public and private entities that provide and pay for *941 health care services to report information to a state agency. The reported information is compiled into a database reflecting "all health care utilization, costs, and resources in [Vermont], and health care utilization and costs for services provided to Vermont residents in another state." 18 V.S.A. § 9410(b). A database of this kind is sometimes called an all-payer claims database, for it requires submission of data from all health insurers and other entities that pay for health care services. Almost 20 States have or are implementing similar databases. See Brief for State of New York et al. as Amici Curiae 1, and n. 1.
Vermont's law requires health insurers, health care providers, health care facilities, and governmental agencies to report any "information relating to health care costs, prices, quality, utilization, or resources required" by the state agency, including data relating to health insurance claims and enrollment. § 9410(c)(3). Health insurers must submit claims data on members, subscribers, and policyholders. § 9410(h). The Vermont law defines health insurer to include a "self-insured ... health care benefit plan," § 9402(8), as well as "any third party administrator" and any "similar entity with claims data, eligibility data, provider files, and other information relating to health care provided to a Vermont resident." § 9410( j)(1)(B). The database must be made "available as a resource for insurers, employers, providers, purchasers of health care, and State agencies to continuously review health care utilization, expenditures, and performance in Vermont." § 9410(h)(3)(B).
Vermont law leaves to a state agency the responsibility to "establish the types of information to be filed under this section, and the time and place and the manner in which such information shall be filed." § 9410(d). The law has been implemented by a regulation creating the Vermont Healthcare Claims Uniform Reporting and Evaluation System. The regulation requires the submission of "medical claims data, pharmacy claims data, member eligibility data, provider data, and other information," Reg. H-2008-01, Code of Vt. Rules 21-040-021, § 4(D) (2016) (CVR), in accordance with specific formatting, coding, and other requirements, § 5. Under the regulation, health insurers must report data about the health care services provided to Vermonters regardless of whether they are treated in Vermont or out-of-state and about non-Vermonters who are treated in Vermont. § 4(D); see also § 1. The agency at present does not collect data on denied claims, § 5(A)(8), but the statute would allow it to do so.
Covered entities (reporters) must register with the State and must submit data monthly, quarterly, or annually, depending on the number of individuals that an entity serves. The more people served, the more frequently the reports must be filed. §§ 4, 6(I). Entities with fewer than 200 members need not report at all, ibid., and are termed "voluntary" reporters as distinct from "mandated" reporters, § 3. Reporters can be fined for not complying with the statute or the regulation. § 10; 18 V.S.A. § 9410(g).
B
Respondent Liberty Mutual Insurance Company maintains a health plan (Plan) that provides benefits in all 50 States to over 80,000 individuals, comprising respondent's employees, their families, and former employees. The Plan is self-insured and self-funded, which means that Plan benefits are paid by respondent. The Plan, which qualifies as an "employee welfare benefit plan" under ERISA, 29 U.S.C. § 1002(1), is subject to "ERISA's comprehensive regulation," New York State Conference of Blue Cross & Blue Shield Plans *942 v. Travelers Ins. Co., 514 U.S. 645, 650, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995). Respondent, as the Plan sponsor, is both a fiduciary and plan administrator.
The Plan uses Blue Cross Blue Shield of Massachusetts, Inc. (Blue Cross) as a third-party administrator. Blue Cross manages the "processing, review, and payment" of claims for respondent. Liberty Mut. Ins. Co. v. Donegan, 746 F.3d 497, 502 (C.A.2 2014) (case below). In its contract with Blue Cross, respondent agreed to "hold [Blue Cross] harmless for any charges, including legal fees, judgments, administrative expenses and benefit payment requirements, ... arising from or in connection with [the Plan] or due to [respondent's] failure to comply with any laws or regulations." App. 82. The Plan is a voluntary reporter under the Vermont regulation because it covers some 137 Vermonters, which is fewer than the 200-person cutoff for mandated reporting. Blue Cross, however, serves several thousand Vermonters, and so it is a mandated reporter. Blue Cross, therefore, must report the information it possesses about the Plan's members in Vermont.
In August 2011, Vermont issued a subpoena ordering Blue Cross to transmit to a state-appointed contractor all the files it possessed on member eligibility, medical claims, and pharmacy claims for Vermont members. Id., at 33. (For clarity, the Court uses "Vermont" to refer not only to the State but also to state officials acting in their official capacity.) The penalty for noncompliance, Vermont threatened, would be a fine of up to $2,000 a day and a suspension of Blue Cross' authorization to operate in Vermont for as long as six months. Id., at 31. Respondent, concerned in part that the disclosure of confidential information regarding its members might violate its fiduciary duties under the Plan, instructed Blue Cross not to comply. Respondent then filed this action in the United States District Court for the District of Vermont. It sought a declaration that ERISA pre-empts application of Vermont's statute and regulation to the Plan and an injunction forbidding Vermont from trying to acquire data about the Plan or its members.
Vermont filed a motion to dismiss, which the District Court treated as one for summary judgment, see Fed. Rule Civ. Proc. 12(d), and respondent filed a cross-motion for summary judgment. The District Court granted summary judgment to Vermont. It first held that respondent, despite being a mere voluntary reporter, had standing to sue because it was faced with either allegedly violating its "fiduciary and administrative responsibilities to the Plan" or assuming liability for Blue Cross' withholding of the data from Vermont. Liberty Mut. Ins. Co. v. Kimbell, No. 2:11-cv-204, 2012 WL 5471225 (D.Vt., Nov. 9, 2012), p. 12. The District Court then concluded that the State's reporting scheme was not pre-empted. Although that scheme "may have some indirect effect on health benefit plans," the court reasoned that the "effect is so peripheral that the regulation cannot be considered an attempt to interfere with the administration or structure of a welfare benefit plan." Id., at 31-32.
The Court of Appeals for the Second Circuit reversed. The panel was unanimous in concluding that respondent had standing, but it divided on the merits of the pre-emption challenge. The panel majority explained that "one of ERISA's core functions-reporting-[cannot] be laden with burdens, subject to incompatible, multiple and variable demands, and freighted with risk of fines, breach of duty, and legal expense." 746 F.3d, at 510. The Vermont regime, the court held, does just that. Id., at 508-510.
*943 This Court granted certiorari to address the important issue of ERISA pre-emption. 576 U.S. ----, 135 S.Ct. 2887, 192 L.Ed.2d 923 (2015).
II
The text of ERISA's express pre-emption clause is the necessary starting point. It is terse but comprehensive. ERISA pre-empts
"any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a).
The Court has addressed the potential reach of this clause before. In Travelers, the Court observed that "[i]f 'relate to' were taken to extend to the furthest stretch of its indeterminacy, then for all practical purposes pre-emption would never run its course." 514 U.S., at 655, 115 S.Ct. 1671. That is a result "no sensible person could have intended." California Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc., 519 U.S. 316, 336, 117 S.Ct. 832, 136 L.Ed.2d 791 (1997) (SCALIA, J., concurring). So the need for workable standards has led the Court to reject "uncritical literalism" in applying the clause. Travelers, 514 U.S., at 656, 115 S.Ct. 1671.
Implementing these principles, the Court's case law to date has described two categories of state laws that ERISA pre-empts. First, ERISA pre-empts a state law if it has a " 'reference to' " ERISA plans. Ibid. To be more precise, "[w]here a State's law acts immediately and exclusively upon ERISA plans ... or where the existence of ERISA plans is essential to the law's operation ..., that 'reference' will result in pre-emption." Dillingham, supra, at 325, 117 S.Ct. 832. Second, ERISA pre-empts a state law that has an impermissible "connection with" ERISA plans, meaning a state law that "governs ... a central matter of plan administration" or "interferes with nationally uniform plan administration." Egelhoff v. Egelhoff, 532 U.S. 141, 148, 121 S.Ct. 1322, 149 L.Ed.2d 264 (2001). A state law also might have an impermissible connection with ERISA plans if "acute, albeit indirect, economic effects" of the state law "force an ERISA plan to adopt a certain scheme of substantive coverage or effectively restrict its choice of insurers." Travelers, supra, at 668, 115 S.Ct. 1671. When considered together, these formulations ensure that ERISA's express pre-emption clause receives the broad scope Congress intended while avoiding the clause's susceptibility to limitless application.
III
Respondent contends that Vermont's law falls in the second category of state laws that are pre-empted by ERISA: laws that govern, or interfere with the uniformity of, plan administration and so have an impermissible " 'connection with' " ERISA plans. Egelhoff, supra, at 148, 121 S.Ct. 1322 ; Travelers, 514 U.S., at 656, 115 S.Ct. 1671. When presented with these contentions in earlier cases, the Court has considered "the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive," ibid ., and "the nature of the effect of the state law on ERISA plans," Dillingham, supra, at 325, 117 S.Ct. 832. Here, those considerations lead the Court to conclude that Vermont's regime, as applied to ERISA plans, is pre-empted.
A
ERISA does not guarantee substantive benefits. The statute, instead, seeks to make the benefits promised by an employer more secure by mandating certain oversight systems and other standard procedures.
*944 Travelers, 514 U.S., at 651, 115 S.Ct. 1671. Those systems and procedures are intended to be uniform. Id., at 656, 115 S.Ct. 1671 (ERISA's pre-emption clause "indicates Congress's intent to establish the regulation of employee welfare benefit plans 'as exclusively a federal concern' " (quoting Alessi v. Raybestos-Manhattan, Inc., 451 U.S. 504, 523, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981) )). "Requiring ERISA administrators to master the relevant laws of 50 States and to contend with litigation would undermine the congressional goal of 'minimiz[ing] the administrative and financial burden[s]' on plan administrators-burdens ultimately borne by the beneficiaries." Egelhoff, supra, at 149-150, 121 S.Ct. 1322 (quoting Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 142, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990) ); see also Fort Halifax Packing Co. v. Coyne, 482 U.S. 1, 9, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987).
ERISA's reporting, disclosure, and recordkeeping requirements for welfare benefit plans are extensive. ERISA plans must present participants with a plan description explaining, among other things, the plan's eligibility requirements and claims-processing procedures. §§ 1021(a)(1), 1022, 1024(b)(1). Plans must notify participants when a claim is denied and state the basis for the denial. § 1133(1). Most important for the pre-emption question presented here, welfare benefit plans governed by ERISA must file an annual report with the Secretary of Labor. The report must include a financial statement listing assets and liabilities for the previous year and, further, receipts and disbursements of funds. §§ 1021(b), 1023(b)(1), 1023(b)(3)(A)-(B), 1024(a). The information on assets and liabilities as well as receipts and disbursements must be provided to plan participants on an annual basis as well. §§ 1021(a)(2), 1023(b)(3)(A)-(B), 1024(b)(3). Because welfare benefit plans are in the business of providing benefits to plan participants, a plan's reporting of data on disbursements by definition incorporates paid claims. See Dept. of Labor, Schedule H (Form 5500) Financial Information (2015) (requiring reporting of "[b]enefit claims payable" and "[b]enefit payment and payments to provide benefits"), online at http://www.dol.gov/ebsa/pdf/2015-5500-Schedule-H.pdf (as last visited Feb. 26, 2016).
The Secretary of Labor has authority to establish additional reporting and disclosure requirements for ERISA plans. ERISA permits the Secretary to use the data disclosed by plans "for statistical and research purposes, and [to] compile and publish such studies, analyses, reports, and surveys based thereon as he may deem appropriate." § 1026(a). The Secretary also may, "in connection" with any research, "collect, compile, analyze, and publish data, information, and statistics relating to" plans. § 1143(a)(1); see also § 1143(a)(3) (approving "other studies relating to employee benefit plans, the matters regulated by this subchapter, and the enforcement procedures provided for under this subchapter").
ERISA further permits the Secretary of Labor to "requir[e] any information or data from any [plan] where he finds such data or information is necessary to carry out the purposes of" the statute, § 1024(a)(2)(B), and, when investigating a possible statutory violation, "to require the submission of reports, books, and records, and the filing of data" related to other requisite filings, § 1134(a)(1). The Secretary has the general power to promulgate regulations "necessary or appropriate" to administer the statute, § 1135, and to provide exemptions from any reporting obligations, § 1024(a)(3).
It should come as no surprise, then, that plans must keep detailed records so *945 compliance with ERISA's reporting and disclosure requirements may be "verified, explained, or clarified, and checked for accuracy and completeness." § 1027. The records to be retained must "include vouchers, worksheets, receipts, and applicable resolutions." Ibid. ; see also § 1135 (allowing the Secretary to "provide for the keeping of books and records, and for the inspection of such books and records").
These various requirements are not mere formalities. Violation of any one of them may result in both civil and criminal liability. See §§ 1131-1132.
As all this makes plain, reporting, disclosure, and recordkeeping are central to, and an essential part of, the uniform system of plan administration contemplated by ERISA. The Court, in fact, has noted often that these requirements are integral aspects of ERISA. See, e.g., Dillingham, 519 U.S., at 327, 117 S.Ct. 832 ; Travelers, supra, at 651, 115 S.Ct. 1671 ; Ingersoll-Rand, supra, at 137, 111 S.Ct. 478 ; Massachusetts v. Morash, 490 U.S. 107, 113, 115, 109 S.Ct. 1668, 104 L.Ed.2d 98 (1989) ; Fort Halifax, supra, at 9, 107 S.Ct. 2211 ; Metropolitan Life Ins. Co. v. Massachusetts, 471 U.S. 724, 732, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985).
Vermont's reporting regime, which compels plans to report detailed information about claims and plan members, both intrudes upon "a central matter of plan administration" and "interferes with nationally uniform plan administration." Egelhoff, 532 U.S., at 148, 121 S.Ct. 1322. The State's law and regulation govern plan reporting, disclosure, and-by necessary implication-recordkeeping. These matters are fundamental components of ERISA's regulation of plan administration. Differing, or even parallel, regulations from multiple jurisdictions could create wasteful administrative costs and threaten to subject plans to wide-ranging liability. See, e.g., 18 V.S.A. § 9410(g) (supplying penalties for violation of Vermont's reporting rules); CVR § 10 (same). Pre-emption is necessary to prevent the States from imposing novel, inconsistent, and burdensome reporting requirements on plans.
The Secretary of Labor, not the States, is authorized to administer the reporting requirements of plans governed by ERISA. He may exempt plans from ERISA reporting requirements altogether. See § 1024(a)(3); 29 CFR § 2520.104-44 (2005) (exempting self-insured health plans from the annual financial reporting requirement). And, he may be authorized to require ERISA plans to report data similar to that which Vermont seeks, though that question is not presented here. Either way, the uniform rule design of ERISA makes it clear that these decisions are for federal authorities, not for the separate States.
B
Vermont disputes the pre-emption of its reporting regime on several fronts. The State argues that respondent has not demonstrated that the reporting regime in fact has caused it to suffer economic costs. Brief for Petitioner 52-54. But respondent's challenge is not based on the theory that the State's law must be pre-empted solely because of economic burdens caused by the state law. See Travelers, 514 U.S., at 668, 115 S.Ct. 1671. Respondent argues, rather, that Vermont's scheme regulates a central aspect of plan administration and, if the scheme is not pre-empted, plans will face the possibility of a body of disuniform state reporting laws and, even if uniform, the necessity to accommodate multiple governmental agencies. A plan need not wait to bring a pre-emption claim until confronted with numerous inconsistent obligations and encumbered with any ensuing costs.
*946 Vermont contends, furthermore, that ERISA does not pre-empt the state statute and regulation because the state reporting scheme has different objectives. This Court has recognized that "[t]he principal object of [ERISA] is to protect plan participants and beneficiaries." Boggs v. Boggs, 520 U.S. 833, 845, 117 S.Ct. 1754, 138 L.Ed.2d 45 (1997). And "[i]n enacting ERISA, Congress' primary concern was with the mismanagement of funds accumulated to finance employee benefits and the failure to pay employees benefits from accumulated funds." Morash, supra, at 115, 109 S.Ct. 1668. The State maintains that its program has nothing to do with the financial solvency of plans or the prudent behavior of fiduciaries. See Brief for Petitioner 29. This does not suffice to avoid federal pre-emption.
"[P]re-emption claims turn on Congress's intent." Travelers, 514 U.S., at 655, 115 S.Ct. 1671. The purpose of a state law, then, is relevant only as it may relate to the "scope of the state law that Congress understood would survive," id., at 656, 115 S.Ct. 1671 or "the nature of the effect of the state law on ERISA plans," Dillingham, supra, at 325, 117 S.Ct. 832. In Travelers, for example, the Court noted that "[b]oth the purpose and the effects of" the state law at issue "distinguish[ed] it from" laws that "function as a regulation of an ERISA plan itself." 514 U.S., at 658-659, 115 S.Ct. 1671. The perceived difference here in the objectives of the Vermont law and ERISA does not shield Vermont's reporting regime from pre-emption. Vermont orders health insurers, including ERISA plans, to report detailed information about the administration of benefits in a systematic manner. This is a direct regulation of a fundamental ERISA function. Any difference in purpose does not transform this direct regulation of "a central matter of plan administration," Egelhoff, supra, at 148, 121 S.Ct. 1322 into an innocuous and peripheral set of additional rules.
The Vermont regime cannot be saved by invoking the State's traditional power to regulate in the area of public health. The Court in the past has "addressed claims of pre-emption with the starting presumption that Congress does not intend to supplant state law," in particular state laws regulating a subject of traditional state power. Travelers, supra, at 654-655, 115 S.Ct. 1671. ERISA, however, "certainly contemplated the pre-emption of substantial areas of traditional state regulation." Dillingham, 519 U.S., at 330, 117 S.Ct. 832. ERISA pre-empts a state law that regulates a key facet of plan administration even if the state law exercises a traditional state power. See Egelhoff, 532 U.S., at 151-152, 121 S.Ct. 1322. The fact that reporting is a principal and essential feature of ERISA demonstrates that Congress intended to pre-empt state reporting laws like Vermont's, including those that operate with the purpose of furthering public health. The analysis may be different when applied to a state law, such as a tax on hospitals, see De Buono v. NYSA-ILA Medical and Clinical Services Fund, 520 U.S. 806, 117 S.Ct. 1747, 138 L.Ed.2d 21 (1997), the enforcement of which necessitates incidental reporting by ERISA plans; but that is not the law before the Court. Any presumption against pre-emption, whatever its force in other instances, cannot validate a state law that enters a fundamental area of ERISA regulation and thereby counters the federal purpose in the way this state law does.
IV
Respondent suggests that the Patient Protection and Affordable Care Act (ACA), which created new reporting obligations *947 for employer-sponsored health plans and incorporated those requirements into the body of ERISA, further demonstrates that ERISA pre-empts Vermont's reporting regime. See 29 U.S.C. § 1185d ; 42 U.S.C. §§ 300gg-15a, 17 ; § 18031(e)(3). The ACA, however, specified that it shall not "be construed to preempt any State law that does not prevent the application of the provisions" of the ACA. 42 U.S.C. § 18041(d). This anti-pre-emption provision might prevent any new ACA-created reporting obligations from pre-empting state reporting regimes like Vermont's, notwithstanding the incorporation of these requirements in the heart of ERISA. But see 29 U.S.C. § 1191(a)(2) (providing that the new ACA provisions shall not be construed to affect or modify the ERISA pre-emption clause as applied to group health plans); 42 U.S.C. § 300gg-23(a)(2) (same).
The Court has no need to resolve this issue. ERISA's pre-existing reporting, disclosure, and recordkeeping provisions-upon which the Court's conclusion rests-maintain their pre-emptive force whether or not the new ACA reporting obligations also pre-empt state law.
* * *
ERISA's express pre-emption clause requires invalidation of the Vermont reporting statute as applied to ERISA plans. The state statute imposes duties that are inconsistent with the central design of ERISA, which is to provide a single uniform national scheme for the administration of ERISA plans without interference from laws of the several States even when those laws, to a large extent, impose parallel requirements. The judgment of the Court of Appeals for the Second Circuit is
Affirmed .