

KEN PAXTON

ATTORNEY GENERAL OF TEXAS

February 5, 2025

The Honorable Charles Schwertner
Chair, Senate Committee on Business & Commerce
Texas State Senate
Post Office Box 12068
Austin, Texas 78711-2068

**Opinion No. KP-0480**

Re: Whether House Bill 1763 and House Bill 1919, enacted by the 87th Legislature and codified in chapter 1369 of the Insurance Code, are enforceable against a health benefit plan issuer and a pharmacy benefit manager administering the pharmacy benefits of the health benefit plan in certain circumstances (RQ-0539-KP)

Dear Senator Schwertner:

You ask about the enforceability of House Bill 1763 ("HB 1763") and House Bill 1919 ("HB 1919"), enacted by the 87th Legislature, Regular Session, and codified in chapter 1369 of the Insurance Code.[1] Specifically, you ask whether the two bills are enforceable against a health benefit plan issuer ("issuer") and a pharmacy benefit manager ("PBM") administering the pharmacy benefits of an Employee Retirement Income Security Act of 1974 (ERISA)[2] health benefit plan in certain circumstances. Request Letter at 1. You also ask whether they are enforceable against certain entities "domiciled in a United States jurisdiction outside of Texas" but that provide health benefit plan "coverage to Texas residents and use[] a [PBM] that directly contracts with a network of providers including Texas pharmacy providers." *Id.* You tell us that the two bills were enacted in 2021 "to reform various practices concerning the relationship

---

[1]*See* Letter from Honorable Charles Schwertner, Chair, Senate Comm. on Bus. & Com., to Honorable Ken Paxton, Tex. Att'y Gen. at 1 (rec'd May 13, 2024), https://texasattorneygeneral.gov/sites/default/files/request-files/request/2024/RQ0539KP.pdf ("Request Letter").

HB 1919 added sections 1369.551 through 1369.555 to the Insurance Code. *See* Act of May 31, 2021, 87th Leg., R.S., ch. 1012, § 1, 2021 Tex. Gen. Laws 2688 (codified at TEX. INS. CODE §§ 1369.551–.555). HB 1763 as originally enacted also added sections 1369.551 through 1369.555 to the Insurance Code but they were not identical. *See* Act of May 13, 2021, 87th Leg., R.S., ch. 142, § 1, 2021 Tex. Gen. Laws 315. The Legislature later redesignated the provisions in HB 1763 to be codified at Insurance Code sections 1369.601 through 1369.610. *See* Act of May 20, 2023, 88th Leg., R.S., ch. 768, § 24.001(27), 2023 Tex. Gen. Laws 1979, 2007 (codified at TEX. INS. CODE §§ 1369.601–.610).

[2]ERISA "is a federal law that sets minimum standards for most voluntarily established retirement and health plans in private industry to provide protection for individuals in these plans." U.S. DEP'T OF LABOR, EMPLOYEE RETIREMENT INCOME SECURITY ACT (ERISA), https://www.dol.gov/general/topic/retirement/erisa (last visited Feb. 5, 2025).

between" a PBM and network provider. *Id.* at 2. You explain that you are aware of recent testimony on other legislation[3] before the Texas Legislature that has "called into question their enforceability with respect to ERISA plans, including those domiciled in states outside of Texas," and you seek clarity from our office. *Id.* As the provisions of HB 1763 and HB 1919 are now part of the Insurance Code, we refer to them by their statutory reference and start with the statutory text.

### HB 1763 added Insurance Code sections 1369.601 through 1369.610.

Found in subchapter M, sections 1369.601 through 1369.610 relate to contracts between a health benefit plan or PBM and pharmacists and pharmacies. *See generally* TEX. INS. CODE §§ 1369.601–.610. The subchapter applies to a health benefit plan that provides benefits for "medical or surgical expenses incurred as a result of a health condition, accident, or sickness, including an individual, group, blanket, or franchise insurance policy or insurance agreement, a group hospital service contract, or an individual or group evidence of coverage or similar coverage document that is offered by" certain listed entities. *Id.* § 1369.602(a). The subchapter neither expressly identifies nor exempts ERISA plans. *See id.*

Subchapter M contains several provisions. It prohibits an issuer or PBM from "reduc[ing] the amount of a claim payment to a pharmacist or pharmacy after adjudication of the claim." *Id.* § 1369.603(a). It also prohibits a PBM from paying "an affiliated pharmacist or pharmacy a reimbursement amount that is more than the amount the [PBM] pays a nonaffiliated pharmacist or pharmacy for the same pharmacist service." *Id.* § 1369.604(b). Subchapter M requires a pharmacy benefit network[4] contract to "specify or reference a separate fee schedule . . . [that] must be provided electronically in an easily accessible and complete spreadsheet format and, on request, in writing to each contracted pharmacist and pharmacy." *Id.* § 1369.605.

In addition, subchapter M entitles a pharmacist or pharmacy on whose behalf a pharmacy services administrative organization[5] enters into a contract with an issuer or PBM "to receive from

---

[3]We presume you are referring to testimony regarding Senate Bill 1137 and House Bill 2021. *See* Tex. S.B. 1137, 88th Leg., R.S. (2023); Tex. H.B. 2021, 88th Leg., R.S. (2023). These bills, if passed, would have amended Insurance Code chapter 4151 to address the applicability of certain laws to PBMs. However, both bills were left pending in committee and are not relevant to our analysis here. *See Tex. Mut. Ins. Co. v. Ruttiger*, 381 S.W.3d 430, 453 (Tex. 2012) ("[W]e attach no controlling significance to the Legislature's failure to enact legislation . . . ." (quoting *Entergy Gulf States, Inc., v. Summers*, 282 S.W.3d 433, 443 (Tex. 2009))).

[4]"'Pharmacy benefit network' means a network of pharmacies that have contracted with a pharmacy benefit manager to provide pharmacist services to enrollees." TEX. INS. CODE § 1369.601(2).

[5]"Pharmacy services administrative organization" is defined as:

> [A]n entity that contracts with a pharmacist or pharmacy to conduct on behalf of the pharmacist or pharmacy the pharmacist's or pharmacy's business with a third-party payor, including a pharmacy benefit manager, in connection with pharmacy benefits and to assist the pharmacist or pharmacy by providing administrative services, including negotiating, executing, and administering a contract with a third-party payor and communicating with the third-party payor in connection with a contract or pharmacy benefits.

*Id.* § 1369.601(3).

the . . . organization a copy of the contract provisions applicable to the pharmacist or pharmacy." *Id.* § 1369.606. It also provides that an "[issuer] or [PBM] may not as a condition of a contract . . . prohibit the pharmacist or pharmacy from: (1) mailing or delivering a drug to a patient on the patient's request . . . or (2) charging a shipping and handling fee to a patient requesting a prescription be mailed or delivered." *Id.* § 1369.607(a). In addition, subchapter M prohibits an issuer or PBM from requiring as a condition of a contract "accreditation standards or recertification requirements inconsistent with, more stringent than, or in addition to federal and state requirements" or, with limited exceptions, from "prohibit[ing] a licensed pharmacist or pharmacy from dispensing any drug that may be dispensed under the pharmacist's or pharmacy's license." *Id.* § 1369.608. It also provides that a PBM "may not retaliate against a pharmacist or pharmacy based on the pharmacist's or pharmacy's exercise of any right or remedy under this chapter." *Id.* § 1369.609(a). Lastly, it provides that the provisions of subchapter M "may not be waived, voided, or nullified by contract." *Id.* § 1369.610. Generally, subchapter M regulates contracting practices with pharmacists and pharmacies.

**HB 1919 added Insurance Code sections 1369.551 through 1369.555.**

Sections 1369.551 through 1369.555 are contained in subchapter L, which regulates referral and solicitation practices by issuers and PBMs concerning their affiliated pharmacies and durable medical equipment providers. *Id.* §§ 1369.551–.555. Unlike subchapter M, subchapter L does not include an applicability section. *Compare id.* §§ 1369.551–.555, *with id.* § 1369.602(b)(6). Instead, subchapter L states what plans it does not apply to but, like subchapter M, makes no mention of ERISA plans. *See id.* § 1369.552. Subchapter L also defines "[h]ealth benefit plan," but this too does not mention ERISA plans. *Id.* § 1369.551(2).

Section 1369.553 prohibits an issuer or PBM from giving or receiving "a record containing patient- or prescriber-identifiable prescription information for a commercial purpose." *Id.* § 1369.553(b). Section 1369.553, however, does not prevent the transfer of information for a non-commercial purpose, such as for the purpose of "pharmacy reimbursement, formulary compliance, pharmaceutical care, utilization review by a health care provider, or a public health activity authorized by law." *Id.* § 1369.553(a). Similarly, section 1369.554 prohibits an issuer or PBM from steering a patient to use the issuer's or PBM's affiliated provider through certain means of communication unless certain requirements are met. *Id.* § 1369.554(b)(1). Both sections 1369.553 and 1369.554 regulate the PBMs' and issuers' communications with or concerning patients.

Section 1369.555 prohibits a PBM or issuer from requiring a patient to use an affiliated provider to receive the maximum benefit for the service under the patient's health benefit plan. *Id.* § 1369.555(a). It also prohibits a PBM and issuer from "offer[ing] or implement[ing] a health benefit plan that requires or induces a patient to use the . . . affiliated provider, including by providing for reduced cost-sharing." *Id.* § 1369.555(b). Section 1369.555 prevents an issuer or PBM from soliciting a patient or provider to transfer a prescription to an affiliated provider or from requiring a nonaffiliated provider to transfer a patient's prescription to an affiliated provider without the patient's written consent. *Id.* § 1369.555(c), (d). With the relevant statutory text identified, we now consider ERISA.

**Congress enacted ERISA to create uniform standards and requirements for employer health plans.**

Congress enacted ERISA to create a "uniform body of benefits law" and to "minimiz[e] the administrative and financial burden of complying with conflicting directives." *Rutledge v. Pharm. Care Mgmt. Ass'n*, 592 U.S. 80, 86 (2020) (quoting *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 142 (1990)); *see generally* 29 U.S.C. §§ 1001–1461. ERISA makes "the benefits promised by an employer more secure by mandating certain oversight systems and other standard procedures." *Gobeille v. Liberty Mut. Ins. Co.*, 577 U.S. 312, 320–21 (2016). To accomplish this, ERISA addresses "reporting, disclosure, fiduciary responsibility, and the like," *N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 661 (1995) (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 98 & n.19 (1983)), as well as "determining the eligibility of claimants, calculating benefit levels, making disbursements, [and] monitoring the availability of funds for benefit payments," *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 9 (1987). To accomplish that purpose, ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA. 29 U.S.C. § 1144(a). "[A] state law relates to an ERISA plan if it has a connection with or reference to such a plan." *Rutledge*, 592 U.S. at 86 (citation omitted). If it does either, the state law is preempted. *Id.* at 86–87.

**Although ERISA's preemption clause is broad, it is not boundless.**

In *Rutledge v. Pharmaceutical Care Management Association*, the United States Supreme Court clarified the scope of ERISA's preemption provision when it held that ERISA did not preempt an Arkansas law that governed pharmacy reimbursement rates set by a PBM. *Id.* The Arkansas law provided a price floor at which PBMs were required to reimburse pharmacies. *Id.* at 84; *see also* ARK. CODE § 17-92-507.[6] To evaluate the preemption question, the Court looked at whether the Arkansas law had either: (1) a "connection with" or (2) a "reference to" an ERISA plan. *Rutledge*, 592 U.S. at 84–85. As we must consider the same with the provisions in chapter 1369, we review the Court's analysis under these two prongs.

**A state law has a connection with an ERISA plan if the state law governs a central matter of plan administration or interferes with nationally uniform plan administration.**

---

[6]Specifically, the Arkansas law required PBMs to: (1) account for price increases by tying reimbursement rates to pharmacies' acquisition costs through timely updates to their maximum allowable cost ("MAC") lists when drug wholesale prices increased; (2) permit a pharmacy to decline to sell a drug to a beneficiary if the relevant PBM would reimburse the pharmacy at less than its acquisition cost; and (3) provide administrative appeal procedures for pharmacies to challenge MAC reimbursement prices that were below the pharmacies' acquisition costs. *Rutledge*, 592 U.S. at 84−85. For the appeal procedures, a PBM was required to increase its reimbursement rate to cover the pharmacy's acquisition cost, if a pharmacy could not have acquired the drug at a lower price from its typical wholesaler. *Id.* at 85. A PBM was also required to allow pharmacies to "reverse and rebill" each reimbursement claim affected by the pharmacy's inability to procure the drug from its typical wholesaler at a price equal to or less than the MAC reimbursement price. *Id.*

To determine whether there is an impermissible connection with an ERISA plan, the Court in *Rutledge* assessed whether the state law "governs a central matter of plan administration or interferes with nationally uniform plan administration." *Id.* at 87 (citation omitted). More specifically, a state law has an "impermissible connection" with an ERISA plan where it requires ERISA "providers to structure benefit plans in particular ways, such as by requiring payment of specific benefits," or binds "plan administrators to specific rules for determining beneficiary status." *Id.* at 86–87. In other words, a state law is preempted where it "effectively dictate[s] plan choices." *Id.* at 88. This can include a state law with "acute, albeit indirect, economic effects [that] force an ERISA plan to adopt a certain scheme of substantive coverage." *Id.* at 87 (quoting *Gobeille*, 577 U.S. at 320).

The Court held that the Arkansas law did not have an impermissible connection with ERISA plans because it did "not require plan administrators to structure their benefit plans in any particular manner," and found that the law merely "regulat[ed] reimbursement rates." *Id.* at 89−90. Thus, the law was a method of cost regulation, not benefits regulation, and "cost uniformity was almost certainly not an object of pre-emption." *Id.* at 88 (quoting *Travelers*, 514 U.S. at 662).

Of particular relevance here, the Court addressed specific arguments raised about impacts on ERISA plan design, benefits, costs, and uniform plan administration. *See id.* at 90–91. Similar arguments are raised by briefing parties regarding subchapters M and L, and so we examine those arguments and the Court's response.

One argument was that the Arkansas law had an impact on ERISA plan design by "mandating a particular pricing methodology for pharmacy benefits" where it "require[d] PBMs to reimburse pharmacies based on acquisition costs." *Id.* at 90. However, the Court disagreed as there was no requirement concerning benefits or beneficiaries. *Id.* ("Requiring PBMs to reimburse pharmacies at or above their acquisition costs does not require plans to provide any particular benefit to any particular beneficiary in any particular way.").

Another argument was that the law governed "central matters of plan administration" and had an impact on "uniform benefits" by requiring "plan administrators [to] 'comply with a particular process, subject to state-specific deadlines, and . . . dictat[ing] the substantive standard governing the resolution of [an] appeal.'" *Id.* (citation omitted). Though the Court agreed that the law required these detailed processes, it still did not find that ERISA preempted the law. *Id.* In fact, the Court recognized that "a PBM, may need [to go so far as] to recalculate and reprocess how much it (and its beneficiary) owes" and that the "price or provision of benefits" may be affected. *Id.* As such, the Court affirmed that "ERISA does not pre-empt 'state-law mechanisms . . . even when those mechanisms prevent plan participants from receiving their benefits.'" *Id.* at 90–91 (quoting *Mackey v. Lanier Collection Agency & Serv., Inc.*, 486 U.S. 825, 831–32 (1988)). The Court cautioned that "[t]aken to its logical endpoint, [such an] argument would pre-empt any suits under state law that could affect the price or provision of benefits." *Id.* at 90. The Court thus rejected the position that any state law affecting ERISA pricing or provision of benefits is preempted.

The Court also disagreed with the argument that the law's provision allowing a pharmacy to decline to dispense a prescription would "effectively den[y] plan beneficiaries their benefits," interfering with central matters of plan administration. *Id.* at 91. Concluding that the law only "require[d] PBMs to compensate pharmacies at or above their acquisition costs," the Court stated that if a pharmacy does decline, "the responsibility lies first with the PBM for offering the pharmacy a below-acquisition reimbursement." *Id.* Thus, the Court found that any impact on plan beneficiaries or their benefits resulted directly from the PBM's actions. In sum, the law regulated the relationship between the PBM and pharmacy, not ERISA plan benefits or beneficiaries.

Lastly, the Court rejected assertions that the law's "enforcement mechanisms interfere[d] with nationally uniform plan administration by creating 'operational inefficiencies[,]'" leading to "increased costs and . . . decreased benefits." *Id.*; *see also Mackey*, 486 U.S. at 831–32 (concluding from the text and structure of ERISA's pre-emption and enforcement provisions that "Congress did not intend to forbid the use of state-law mechanisms of executing judgments against ERISA welfare benefit plans, even when those mechanisms prevent plan participants from receiving their benefits" or impose administrative costs and burdens upon benefit plans). The Court found that "creating inefficiencies alone is not enough to trigger ERISA pre-emption. . . . ERISA does not pre-empt a state law that merely increases costs, however, even if plans decide to limit benefits or charge plan members higher rates as a result." *Rutledge*, 592 U.S. at 91; *see also De Buono v. NYSA-ILA Med. & Clinical Servs. Fund*, 520 U.S. 806, 816 (1997) ("Any state tax, or other law, that increases the cost of providing benefits to covered employees will have some effect on the administration of ERISA plans, but that simply cannot mean that every state law with such an effect is pre-empted by the federal statute."). The Court concluded the Arkansas law did not dictate plan choices, and the increased costs resulting from the law were not so "acute" that they would "effectively dictate plan choices." *Rutledge*, 592 U.S. at 88; *see also Travelers*, 514 U.S. at 649–52, 659–60 (concluding that New York's laws adding 13%, 11 %, and 9% surcharges to hospital bills, including for those patients whose coverage was purchased by an ERISA plan, was not preempted by ERISA because these costs were an "indirect economic influence" that did "not bind plan administrators to any particular choice"); *Mackey*, 486 U.S. at 831–32 (holding that ERISA did not preempt a state garnishment procedure despite petitioners' contention that such actions would impose "substantial administrative burdens and costs" on plans).

As Texas courts are "controlled in the construction of federal laws by the decisions of the Supreme Court of the United States," a Texas court addressing your question would apply the reasoning from *Rutledge* to subchapter L and subchapter M.[7] *Emmons v. Pac. Indem. Co.*, 208 S.W.2d 884, 886 (Tex. 1948).

---

[7]We are aware of two recent decisions applying *Rutledge* to state laws regulating PBMs. *See generally Pharm. Care Mgmt. Ass'n v. Mulready*, 78 F.4th 1183 (10th Cir. 2023), *petition for cert. filed*, 78 F.4th 1183 (May 15, 2024) (No. 23-1213); *Pharm. Care Mgmt. Ass'n v. Wehbi*, 18 F.4th 956 (8th Cir. 2021). "While Texas courts may certainly draw upon the precedents of the Fifth Circuit, or any other federal or state court, in determining the appropriate federal rule of decision, they are *obligated* to follow only higher Texas courts and the United States Supreme Court." *Penrod Drilling Corp. v. Williams*, 868 S.W.2d 294, 296 (Tex. 1993). As such, we look to *Rutledge*.

**Insurance Code sections 1369.601 through 1369.610 neither regulate benefits or beneficiaries nor add such acute costs as to prescribe plan choices.**

We start with the "connection with" prong of ERISA preemption discussed in detail above as applied to subchapter M. For ease of reference, subchapter M's requirements are divided into three groups. *See* TEX. INS. CODE §§ 1369.601−.610; *supra* pp. 2−3.

The first group of provisions address specific contracting requirements for issuers and PBMs who contract with pharmacists and pharmacies, such as permitting them to obtain a copy of the contract, TEX. INS. CODE § 1369.606, as well as contracting prohibitions, such as prohibiting a requirement concerning certain accreditation standards. *Id.* §§ 1369.605–.610; *see supra* pp. 2−3. Some briefers assert that requirements such as prohibiting certain accreditation standards or permitting pharmacies to mail or deliver drugs impact ERISA's network or benefit design. Looking at the statutory text, however, the provisions dictate contractual requirements between PBMs or issuers and pharmacies or pharmacists, and do not have a direct impact on, or directive for, plan benefits or beneficiaries. To the extent any of these requirements affect the "price or provision of benefits," or "plan design" they do not require "plans to provide any particular benefit to any particular beneficiary in any particular way," whether ERISA or otherwise. *Rutledge*, 592 U.S. at 90; *see supra* pp. 4−6. A Texas court following this reasoning would likely conclude these provisions in subchapter M do the same.

As for any potential increased costs resulting from subchapter M, we look only to the statutory text as a fact inquiry is inappropriate for the opinion process. Limiting this review to the Court's precedent and subchapter M's statutory text, a court is more likely to find these requirements account to no more than operational inefficiencies, which are not enough to trigger preemption, "even if plans decide to limit benefits or charge plan members higher rates as a result." *Rutledge*, 592 U.S. at 91; *see supra* pp. 4−6; *see also De Buono*, 520 U.S. at 816.

The second group addresses retaliation based on a pharmacist's or pharmacy's exercise of any right or remedy under subchapter M. TEX. INS. CODE § 1369.609. This provision does not dictate plan choices but instead adds a level of contractual protection for pharmacies and pharmacists that do business with issuers and PBMs. *Cf. Rutledge*, 592 U.S. at 91. Similar to *Rutledge*, if a pharmacist or pharmacy exercises a right under subchapter M, any impact on plan beneficiaries or their benefits will not result from the state law but from the PBM's or issuer's actions. *See supra* p. 6.

Finally, the third group concerns certain costs. Subchapter M's cost-related provisions prohibit the reduction of certain claim payment amounts and higher reimbursement payments to affiliated providers. *See* TEX. INS. CODE §§ 1369.603–.604; *supra* pp. 2−3. On their face the provisions may potentially increase costs to a PBM or issuer, and by extension an ERISA plan. Comparing these requirements to those in *Rutledge*, *supra* note 6 and pp. 4−7, as well as other Supreme Court precedent, *supra* pp. 5−6, the requirements do not appear more financially onerous than others found not to be preempted. Reviewing the costs within the limited scope of the statutory text, a court is more likely to find that these provisions are not so "acute" as to "force an ERISA plan to adopt a certain scheme of substantive coverage." *Rutledge*, 592 U.S. at 87 (quoting

*Gobeille*, 577 U.S. at 320); *see also id.* at 84–85 (finding that administrative appeal procedures, increase reimbursement rates, and "reverse and rebill" provisions did not add enough costs to trigger preemption). "Crucially, not every state law that affects an ERISA plan or causes some disuniformity in plan administration has an impermissible connection with an ERISA plan. That is especially so if a law merely affects costs." *Id.* at 87; *see also id.* at 90 ("The plans in *Travelers* might likewise have preferred that their insurers reimburse hospital services without paying an additional surcharge, but that did not transform New York's cost regulation into central plan administration."). Accordingly, a court would likely conclude that these provisions do not have an impermissible connection with ERISA plans.

> **Like subchapter M, Insurance Code sections 1369.551 through 1369.555 neither regulate benefits or beneficiaries nor add such acute costs as to prescribe plan choices.**

Although subchapter L's provisions are distinguishable in substance from those in subchapter M, a court would likely find that the "connection with" analysis and result are similar. The provisions neither expressly require providers to structure benefit plans in particular ways nor provide any requirements concerning beneficiary status for ERISA plans or otherwise. Instead, subchapter L regulates certain referral and solicitation practices by issuers and PBMs concerning affiliated providers. *See* TEX. INS. CODE §§ 1369.553–.555.

As discussed, both sections 1369.553 and 1369.554 regulate the PBMs' and issuers' communications with or concerning patients and do not address benefits or beneficiary status. To the extent these communication requirements increase costs, nothing in the statutory language suggests costs would exceed the operational inefficiencies raised in *Rutledge* or other state laws discussed. *See supra* note 6 and pp. 4−6.

Akin to those sections, section 1369.555 does not mandate certain benefits or terms for beneficiary status; instead, it prohibits an issuer or a PBM from discriminating against nonaffiliated pharmacies and durable medical equipment providers. TEX. INS. CODE § 1369.555. Some briefing parties raised the impact of the affiliated-provider provisions on plans, such as the possible effect of limiting how ERISA plans may work with certain third-party entities, disrupting plan design or uniform plan administration. These provisions, however, appear no more impactful than those in *Rutledge. See supra* note 6 and pp. 4−6. There, the Court recognized that a potential consequence of the Arkansas law was recalculation and reprocessing of what a PBM and beneficiary may owe, impacting the price or provision of benefits. *Rutledge*, 592 U.S. at 90−91. In addition, the Arkansas law in effect could prevent beneficiaries from receiving certain benefits, yet the Court concluded that "not every state law that affects an ERISA plan or causes some disuniformity in plan administration has an impermissible connection with an ERISA plan." *Id.* at 87, 90−91; *see supra* pp. 4−6. If there is potential disuniformity in network design for plans that would like to contract with a PBM or issuer offering a network tier exclusively for affiliated providers, this disuniformity does not appear inexorable. Similar to *Rutledge*, there is nothing in the statutory text expressly preventing a uniform benefit package. *Rutledge*, 592 U.S. at 87 ("If a plan wished, it could still provide a uniform interstate benefit package.").

As for any cost impact, allowing patients to use a nonaffiliated pharmacy might increase costs for an issuer or PBM, but again, nothing in the statutory language suggests costs would exceed the operational inefficiencies raised in *Rutledge* or costs imposed by other state laws that were found not to be preempted. *See supra* note 6 and pp. 4−6. Reviewing only the statutory text, a court is more likely to find that these provisions are not so "acute" as to "force an ERISA plan to adopt a certain scheme of substantive coverage." *Rutledge*, 592 U.S. at 87 (citation omitted). As we discussed with respect to subchapter M, subchapter L's textual requirements do not appear to exceed the burdens imposed by the Arkansas law requirements—where PBMs had to provide administrative appeal procedures, increase reimbursement rates, and allow pharmacies to "reverse and rebill" each reimbursement claim. *Id.* at 84−85; *see supra* pp. 4−6 and note 6. Even with some increased costs, the Court concluded that these costs were operational inefficiencies, which did not trigger preemption. *Rutledge*, 592 U.S. at 91; *see supra* at 4−6. Considering subchapter's L statutory text in light of *Rutledge* and prior precedent, *supra* at 4−6, a court is more likely to conclude the same.

> **A court applying *Rutledge's* "reference to" prong, would likely conclude subchapters M and L are not preempted.**

Under the "reference to" prong, a court would evaluate whether the law "act[ed] immediately and exclusively upon ERISA plans" or whether "the existence of ERISA plans is essential to the law's operation." *Rutledge*, 592 U.S. at 88 (quoting *Gobeille*, 577 U.S. at 319–20). In *Rutledge*, the Court concluded that the Arkansas law did not act immediately and exclusively upon ERISA plans because the law applied to "PBMs whether or not they manage[d] an ERISA plan." *Id.* In contrast, in *Mackey*, the Court found that the state law was preempted because it expressly referred to and solely applied to ERISA plans. 486 U.S. at 828–29; *see also D.C. v. Greater Washington Bd. of Trade*, 506 U.S. 125, 130 (1992) ("Section 2(c)(2) of the District's Equity Amendment Act specifically refers to welfare benefit plans regulated by ERISA and on that basis alone is pre-empted."). Subchapters M and L do not expressly refer to or solely apply to ERISA plans. *See* TEX. INS. CODE §§ 1369.551(2), .552, .602. Accordingly, a court is likely to find that neither subchapter satisfies the "immediately and exclusively" requirement.

The Court in *Rutledge* also concluded that ERISA plans were not essential to the Arkansas law because it "regulate[d] PBMs whether or not the plans they service[d] [fell] within ERISA's coverage." *Rutledge*, 592 U.S. at 89; *see also, e.g., Travelers* 514 U.S. at 656 ("The surcharges are imposed upon patients and HMO's, regardless of whether the commercial coverage or membership, respectively, is ultimately secured by an ERISA plan, private purchase, or otherwise, with the consequence that the surcharge statutes cannot be said to make 'reference to' ERISA plans in any manner."). *Ingersoll-Rand Co.*, on the other hand, involved a state law that was "premised on" the existence of an ERISA plan—making that plan "essential" under *Rutledge*. 498 U.S. at 140 ("[U]nder the Texas court's analysis there simply is *no* cause of action if there is no plan." (emphasis in original)). But subchapters M and L make no mention of ERISA plans and are not "premised on" those plans; instead, these subchapters simply regulate various practices concerning PBMs, issuers, and pharmacies. *See* TEX. INS. CODE §§ 1369.601−.610, .551−.555. It follows that the relationship between ERISA plans and subchapters M and L is unlike that in *Ingersoll-Rand Co.* and more closely aligned with *Rutledge* and *Travelers*. As such, a court would likely

conclude that ERISA plans are not essential to subchapters M or L. Both subchapters therefore fail the "reference to" prong.[8]

> **A court would likely conclude that subchapters M and L are enforceable against PBMs and issuers meeting the applicable statutory definitions and administering a health benefit plan subject to subchapters M and L regardless of where the plan is domiciled.**

Your second question asks whether subchapter M and subchapter L are "enforceable against a[n] [issuer] and a [PBM]" that administer a health benefit plan where: (1) the "plan is domiciled in a United States jurisdiction" that is not in Texas; and (2) the plan "provides coverage to Texas residents" and uses a PBM "that directly contracts with a network of providers including Texas pharmacy providers?" Request Letter at 1.

This question requires us to construe the applicability provisions of the two subchapters. A court will likely enforce subchapters M and L "as written" and "refrain from rewriting text that lawmakers chose." *Entergy Gulf States*, 282 S.W.3d at 443. A court will also likely limit its analysis "to the words of the statute and apply the plain meaning of those words 'unless a different meaning is apparent from the context or the plain meaning leads to absurd or nonsensical results,'" *Jaster v. Comet II Const., Inc.*, 438 S.W.3d 556, 562 (Tex. 2014) (quoting *Molinet v. Kimbrell*, 356 S.W.3d 407, 411 (Tex. 2011)), and "endeavor to read the statute contextually, giving effect to every word, clause, and sentence." *Id.* (citation omitted). We thus begin our analysis by reviewing the statutory text.

Subchapter M applies to a health benefit plan that

> provides benefits for medical or surgical expenses incurred as a result of a health condition, accident, or sickness, including an individual, group, blanket, or franchise insurance policy or insurance agreement, a group hospital service contract, or an individual or group evidence of coverage or similar coverage document that is offered by

---

[8]We also note that ERISA does not expressly regulate contracts with pharmacists and pharmacies or referrals and solicitations concerning affiliated providers. *See generally* 29 U.S.C. §§ 1001–1461. Nothing directly in the Act suggests that Congress chose to displace state laws regulating these types of transactions. *Compare, e.g.*, *Shaw*, 463 U.S. at 97 (concluding that New York's "Human Rights Law, which prohibit[ed] employers from structuring their employee benefit plans in a manner that discriminate[d] on the basis of pregnancy, and [New York's] Disability Benefits Law, which require[d] employers to pay employees specific benefits, clearly 'relate[d] to' benefit plans"), *with Mackey*, 486 U.S. at 831–32 (concluding from the text and structure of ERISA's pre-emption and enforcement provisions that "Congress did not intend to forbid the use of state-law mechanisms of executing judgments against ERISA welfare benefit plans, even when those mechanisms prevent plan participants from receiving their benefits"), *and Travelers*, 514 U.S. at 661–62 (concluding that "cost uniformity was almost certainly not an object of pre-emption, just as laws with only an indirect economic effect on the relative costs of various health insurance packages in a given State are a far cry from those "conflicting directives" from which Congress meant to insulate ERISA plans").

certain entities authorized to issue these plans in Texas. TEX. INS. CODE § 1369.602(a). This definition does not include a limitation as to whether a plan is domiciled within or outside of Texas. *Cf. id.* § 1651.002(1) (stating that this chapter governing long term care benefit plans does not apply to "a certificate that is delivered or issued for delivery in this state under a single employer or labor union group policy that is delivered or issued for delivery outside this state"). Under subchapter M, health benefit plan issuer is not defined, and no provisions limit issuers to issuing only Texas-domiciled plans.[9] A PBM, however, is defined as "a person, other than a pharmacy or pharmacist, who acts as an administrator in connection with pharmacy benefits." *Id.* § 4151.151; *see id.* § 1369.601(1). This definition does not exclude PBMs administering out-of-state plans with Texas beneficiaries. If a PBM meets this definition, and it or an issuer conduct business with an applicable health benefit plan that covers Texas beneficiaries, *id.* § 1369.602(a), a court is likely to find that the PBM and issuer are subject to subchapter M regardless of where the plan is domiciled.

In subchapter L section 1369.552 expressly provides that the subchapter does not apply to "an issuer or provider of health benefits under or a [PBM] administering pharmacy benefits under" the following:

> (1) the state Medicaid program, including the Medicaid managed care program operated under Chapter 533, Government Code;
>
> (2) the child health plan program under Chapter 62, Health and Safety Code;
>
> (3) the TRICARE military health system;
>
> (4) a basic coverage plan under Chapter 1551;
>
> (5) a basic plan under Chapter 1575;
>
> (6) a coverage plan under Chapter 1579;
>
> (7) a plan providing basic coverage under Chapter 1601; or
>
> (8) a workers' compensation insurance policy or other form of providing medical benefits under Title 5, Labor Code.

*Id.* § 1369.552. Similar to subchapter M, "health benefit plan issuer" is not defined, and no provisions limit issuers to issuing only Texas-domiciled plans. Subchapter L, however, does define "[a]ffiliated provider," "[h]ealth benefit plan," and PBM. *Id.* § 1369.551. None of these definitions' applicability are limited by the plan's domicile, including the definition of health benefit plan. If an entity meets one of those definitions, is not excepted by section 1369.552, and works with a plan described in section 1369.551(2) covering Texas beneficiaries, a court would

---

[9]Generally, an issuer is the entity issuing the benefits or policy. *See, e.g.*, TEX. INS. CODE § 1501.002 ("'Health benefit plan issuer' means an entity authorized under this code or another insurance law of this state that provides health insurance or health benefits in this state . . . .").

likely find that subchapter L is enforceable against the issuers and PBMs regardless of whether the plan's domicile is Texas.

You also ask about the enforceability of subchapters M and L to a PBM "that directly contracts with a network of providers including Texas pharmacy providers" for a plan that is not domiciled in Texas but covers Texas residents. Request Letter at 1. Nothing in subchapter M or L suggests that a PBM that satisfies the applicable statutory definitions and contracts with Texas pharmacy providers would be exempt from the statutory requirements generally. In fact, a contract with a Texas entity can be enough to apply Texas law. *See, e.g.*, Tex. Att'y Gen. Op. No. KP-0036 (2015) (reviewing Insurance Code section 1301.061 and concluding that a PBM is subject to Texas law where it only contracted with a Texas-licensed insurer). Therefore, a court is more likely to conclude that the PBM is subject to subchapters M and L where it satisfies the applicable definition and contracts with Texas pharmacy providers to administer a plan covering Texas beneficiaries, regardless of where the plan is domiciled.

### S U M M A R Y

Enacted by House Bill 1763 and House Bill 1919, subchapter M and subchapter L of chapter 1369 of the Texas Insurance Code regulate certain contracts with pharmacists and pharmacies and certain referral and solicitation practices concerning affiliated providers. Under United States Supreme Court precedent, neither subchapter has an impermissible connection with ERISA plans as they do not dictate plan choices or add requirements to beneficiary status. The two subchapters also do not refer to ERISA plans as they neither exclusively apply to those plans nor are ERISA plans essential to the laws' operation. Therefore, a court would likely conclude that ERISA does not preempt either subchapter.

In addition, nothing in the language of either subchapter limits their applicability to plans domiciled in Texas. Thus, a court would likely conclude that both subchapters are enforceable against an issuer or PBM that satisfy the statutory definitions and administer a plan covering Texas residents or contracting with Texas pharmacy providers regardless of where the plan is domiciled.

Very truly yours,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

LESLEY FRENCH
Chief of Staff

D. FORREST BRUMBAUGH
Deputy Attorney General for Legal Counsel

JOSHUA C. FIVESON
Chair, Opinion Committee

AMY L. K. WILLS
Assistant Attorney General, Opinion Committee